JUDGE GOFER
delivered the opinion oe the court.
The appellee being the owner of a lot of ground in the city of Lexington, extending from Main Street back to the center of a small creek called “Town Fork,” granted a part of his lot next to the creek to the city, and the mayor and council proceeded, pursuant to. the grant, to lay out and construct thereon a street called Water Street, which has been kept open and used as a common highway of said city since about the year 1833.
Continuing to own and occupy the ground between Main and Water streets, the appellee in 1868 erected four double tenement-houses, fronting on Water Street and extending nearly to the line of the street, which he rented for between eight and nine hundred dollars per annum.
In 1869 the General Assembly passed an act incorporating the Elizabethtown, Lexington & Big Sandy Railroad Company, with authority to construct a railroad from Elizabeth-town through Lexington to a point on the Big Sandy River near its mouth; and in December, 1871, the mayor and council of Lexington granted to the railroad company the right to construct its road over Water Street in front of the tenement-houses of appellee. The road having been built and put in operation, this action was brought by appellee to recover damages for injury thei’eby done to his property.
Assuming that he was still the owner of the ground occupied by the street to the extent of his abutting lot, subject only to the use of the street for ordinary purposes, appellee alleged that appellant had unlawfully and without his consent entered upon his land and constructed its road over it, without making any compensation therefor; that by the construction and operation of the road the street, which was the only way of ingress to and egress from his lot and houses, had been entirely or nearly entirely obstructed, so as to prevent him and his tenants from having the proper use and enjoyment *385 of the street. He also alleged that the value of his lot and houses had been greatly depreciated by the obstruction of the street, by the close proximity of the road, and by the noise, soot, smoke, and blowing of whistles and steam by passing locomotives and trains, and by the danger of fire being communicated therefrom to his houses.
The appellant admitted that it had constructed and was operating its road along the street, and claimed the right to do so under its charter and the grant from the city; and alleging that it had used all proper care and skill in constructing and operating its road to avoid injury to the adjacent property, denied its liability for any damage resulting from the use of the street or the proximity of its road to property along the line. It also put in issue the appellee’s title to the street and adjacent lot and houses.
There was evidence at the trial .tending to establish the following material facts: that a stone wall had been erected along the margin of “Town Fork,” and that the street lies between that wall and the line of appellee’s lot, and is about twenty-three feet six inches wide; that the railroad is constructed so that the inner rail next to the lot is only five feet nine inches from his line, and that when a train is passing there is only three feet seven inches between the sides of the cars and the line, and that it is about fifteen feet from the inner rail to the walls of the houses, which would leave twelve feet ten inches between the walls of the houses and the walls of the cars of a passing train. These measurements of distances from the track a,nd passing cars to appellee’s line are based on the assumption that his line extends to the outer edge of the sidewalk, which is six feet wide; so that if his line does not extend further than the inner edge of the sidewalk, the distance from the rail to his line is eleven feet nine inches, and from the walls of passing cars to the line is nine feet seven inches. The width of the railroad track is not shown, but *386 if it be assumed to be four feet eight inches, as stated in argument, the cars being nine feet wide, as the evidence shows, it is only ten feet eleven inches from the outside walls of passing cars to the stone wall next to the creek.
There is a street on the opposite side of “Town Fork” running parallel with it, and which may be reached from Water Street by means of alleys running perpendicularly to Water Street on each side of appellee’s lot, and on each of which there is a bridge over the creek. These alleys enable appellee to get along either side of his lot, which is about one hundred and forty feet wide; and besides these and Water Street he has no way by which he can reach that part of his lots on which the tenement-houses stand.
The track superstructure is sunk to the level of the street, except the iron rails, which rise three or four inches above the surface. Wheeled vehicles drawn by horses can not pass or stand in Water Street at any point in front of appellee’s lot when a train is passing, but may conveniently pass at all other times by running the wheels on one side between the rails of the railroad track. The top of the smoke-stack of a passing locomotive is about on a level with the second-story windows, and smoke and fire from the engine are sometimes blown against the houses and in at the windows, and such is the apprehended danger from fire that responsible companies refuse to insure the houses.
The evidence was conflicting as to whether the vendible ■or rental value of the property had been depreciated by the construction and use of the road. The construction and use of the road have been skillful and careful, and no unnecessary injury has been done, and no injury of any kind was shown, except such as results from the nature of the use made of the street and' the proximity of the road to the sidewalk and to ■the property of the appellee.
. Verdict and judgment having been rendered for appellee, *387 and appellant’s motion for a new trial having been overruled, the case has been brought here for revision.
Several preliminary questions relied on for a reversal will first be disposed of.
Appellee was allowed, against the objections of appellant, to prove the value of his property before and since the building of the road. This should not have been allowed. Other causes besides the building and use of the road may have contributed to depreciate the value of the property. The question should have been so shaped as to elicit an answer as to the depreciation, if any, caused by the road.
Appellee was permitted in his own testimony before the jury to state the intention with which he dedicated that part of Water Street to the city. It does not matter what his secret intentions were. The legal effect of the act must be determined by the terms of the dedication, and not by the intention of the dedicator in making it.
At the conclusion of the appellee’s evidence the appellant moved the court to direct the jury to find as in case of a non-suit, but the court overruled the motion. The only ground for such a motion, aside from the question whether the injury complained of was not damnum absque injuria, was the testimony of the appellee himself that he had made four separaté mortgages of the property to persons not parties to the action. The mortgages were not read, and their dates do not appear in the record, and the motion, so far as it was based on the effect of this evidence, was properly overruled.
The main question in the case arises out of the refusal of the court to give the following instruction asked by the appellant, viz.: “Mere inconvenience of egress and ingress is not such an obstruction as the jury can give damages for, and if they believe the defendant’s road-bed is on a grade level with the street, and that the obstruction is of no greater or more dangerous character by the construction and operation of said *388 road than is usual and ordinary in the construction and operation of railroads, then the plaintiff is not entitled to any recovery therefor.”
This instruction was asked, and its correctness is sought to be maintained, on the idea that having authority both from the General Assembly and the mayor and council of the city to construct the road' along the street, the appellant is not liable for any injury resulting therefrom not caused by its negligence, carelessness, or improper manner of building or operating the road. That there is a large class of cases in which no recovery can be had for injuries to adjacent property from the construction of public improvements on the streets of towns and cities is a doctrine well established, not only in this state, but elsewhere. (Keasy v. Louisville, 4 Dana, 154; Lexington & Ohio R. R. Co. v. Applegate, 8 Dana; Louisville & Frankfort R. R. v. Brown, 17 B. Mon. 772; Newport & Cincinnati Bridge Co. v. Foote, 9 Bush, 264; Chapman v. Albany & Schenectady R. R. Co., 10 Barb. 360.)
These cases all proceed upon the ground that the legislature may lawfully grant to corporations created for the benefit of the public the right to use the streets of towns or cities, because such use is not incompatible with the purposes for which streets are established, and that owners of lots abutting on streets hold them subject to the paramount right of the public to use the streets for any purpose not inconsistent with the uses for which they were dedicated. But it is equally well settled, both here and elsewhere, that the owners of lots “ have a peculiar interest in the adjacent street which neither the local nor general public can pretend to claim — a private right in the nature of an incorporeal hereditament legally attached to their contiguous ground — an incidental title to certain facilities and franchises assured to them by contract and by law,” and which are as inviolable as the property in the lots themselves. (8 Dana, 294; Haynes v. Thomas, 7 Ind. 38; Rowan *389 v. Portland, 8 B. Mon. 232; Le Clercq v. Gallipolis, 7 Ohio, 217; Cincinnati v. White, 6 Peters, 431.)
And in view of this private right of lot-owners in the adjacent street this court has said, in discussing the subject of the conflicting rights of lot-owners and railroad companies operating their roads on the streets by legislative authority, that if it should appear that such use was being made of a street as “encroaches on any private right, or obstructs the reasonable use and enjoyment of the street by any person who has an equal right to use it, we shall be ready to enjoin all such wrongful appropriation of the highway.” (8 Dana, 310.)
It being conceded that the owners of adjacent lots have a peculiar private right in the street which is appurtenant to their lots, and is as much property as the lots themselves, we can not escape the conclusion that there may be such an appropriation of the street as will give the lot-owmer a private right of action against those who so appropriate it as to exclude him from its reasonable use, although such appropriation may be expressly authorized by the terms of legislative and municipal grants. The private right of the lot-owner in the adjacent street being conceded to be property, such appropriation or obstruction of the street as deprives him of its reasonable use deprives him to that extent of his property, and no reason is perceived- why this species of property can be taken without just compensation rather than any other.
It wras said by this court in Louisville v. Louisville Rolling Mill Company (3 Bush, 416) that “private property is too sacred and the rights of citizens are too well guarded under our constitutional form of government to be sacrificed at the public behests without compensation.”
While we mean to adhere to the doctrine heretofore recognized, that the use of a street as a site for a railroad track-does not give a right of action to owners of adjacent lots, unless it materially hinders the ordinary use of the street, *390 we feel compelled to decide, in consonance with unmistakable intimations in nearly or quite all the cases recognizing this doctrine, that when such use of the street does unreasonably abridge the right of lot-owners to use the street .as a means of ingress and egress an action will lie against the person or corporation guilty of usurping such unreasonable and exclusive use of streets for the recovery of such immediate and direct damages as the owner may sustain.
The case of Hooker v. The New Haven & Northampton Canal Company (14 Conn. 151) is an authority in point. In that case the company constructed its canal under the direction of commissioners designated by the legislature, and as they directed. Water from waste-weirs made to protect the canal from injury by floods ran over the lands of intervening proprietors on to the land of the plaintiff and injured it. He sued the company, and defense was made on the ground that the canal having been authorized by law, and constructed according to the directions of those who were appointed by the legislature for that purpose, the defendant was not responsible in damages. But the court after an elaborate and able review of the cases held otherwise, saying it was not to be intended from any thing in the charter that the General Assembly meant to give power to the company to take away or essentially impair the rights of others for which they had made no compensation.
In Stephens v. Proprietors of the Middlesex Canal (12 Mass. Rep. 466, 468) the court said, “If the legislature should for public advantage and convenience authorize any improvement the execution of which would require or produce the destruction or diminution of private property, without affording at the same time means of relief and indemnification, the owner of the property destroyed or injured would undoubtedly have his action at the common law.”
The same principle was recognized by Chancellor Kent in *391 Gardner v. The Village of Newburgh (2 Johnson’s Chancery Rep. 166), and by the Supreme Court of Indiana in Evansville & Crawfordsville Railroad Co. v. Dick (9 Ind. 433).
As before remarked, the cases heretofore decided by this court bearing upon the question of the rights of lot-owners to use and of railroad companies to occupy streets as sites for their roads under legislative and municipal grants are made to turn on the fact that, notwithstanding the use of the streets by the railroad companies, there was in each case not only ample room for vehicles on either side of the railroad track, but for their passage in opposite directions.
In Lexington & Ohio Railroad Company v. Applegate, &c. (8 Dana, 302) Chief Justice Robertson said, “It must be an extreme and anomalous case in which an improved mode of transportation which not only facilitates passage but promotes trade and commerce in the city of Louisville could be deemed nevertheless a nuisance. It should never be so considered unless in its operations it unreasonably circumscribes and excludes the rightful use or enjoyment of Main Street by others who háve an equal right to use and enjoy it.” Again he says, “Such a use of the street by the railroad company as did not necessarily disturb others in the use of it could not be considered a wrong,” plainly implying that if such use did necessarily disturb others in the use of the street, it would be considered wrongful.
In Louisville & Frankfort Railroad Company v. Brown (17 B. Monroe, 772) the fact that the street ever since the erection of the wall on which appellant’s road-track was laid had been well graded on either side, and vehicles could pass and repass on either side without inconvenience, was made prominent in the opinion, showing that the court attached great importance to it as affecting the right of recovery.
In Newport & Cincinnati Bridge Co. v. Foote (9 Bush, 264) it is said, “The passage on each side of the approach to *392 the bridge is of sufficient width for all the ordinary purposes of travel.”
In Cosby v. Owensboro & Russellville Railroad Company (10 Bush, 288) it was said the right to grant the use of streets to such public uses as are promotive of commerce and business for the general good of the town or city is limited only to the extent that it must not deprive the persons living on the street of its reasonable use as a passway for foot-passengers, horsemen, and the vehicles in ordinary and general use. The right to such a use in the street is property of which the owner can not be deprived without compensation.
In this case the lot-owners as well as the general public are practically excluded from that part of the street in front of appellee’s lot; for although trains only pass occasionally through the day and night, yet when they do come all other-use of that part of the street is excluded, both from the character of railroad carriages and their inability to yield or give way to other vehicles when meeting or passing them.
The appellee can only reach the front of his lot on "Water Street with any kind of vehicle by choosing a time when no train is in the street, and must get out again before one arrives; and as he can never tell with certainty when this will be, it is impossible to escape the conviction that his use of the street and enjoyment of that right in it which is appurtenant to his lot, is practically destroyed; and to deny him a right of action-against appellant would be a practical repudiation of that fundamental maxim of a fi’ee government which requires that the right to private property should be held sacred.
We therefore adjudge that if appellant’s road' has been so located as to deprive appellee of the means of ingress and egress to and from his lot on Water Street with ordinary vehicles on either side of its road when its trains are passing or standing on the street in front of his lot, he is entitled to recover such damages as he has thereby sustained5; and if his houses are *393 damaged by having smoke, soot, or fire from passing engines thrown or blown into or against them, he is entitled to recover for this also. The-diminution of the value of 'the adjacent property occasioned by these circumstances will be the measure of his right of recovery.
"We have heretofore held in actions for injury, to real estate by trespassers that the plaintiff can only recover compensation for the injury done up to the commencement of the action; but that was. in cases of injuries not continuing and permanent in their character. The injury in this case, if any, is permanent and enduring, and no reason is perceived why a single recovery may not be had for the whole injury to result .from the acts complained of.
The instructions given by the court are in the main correct as abstract propositions of law; but were erroneous and misleading, because they did not define to the jury what private right the appellee had in the street, or what would be an invasion of such rights, but left them to form their own opinions as to both. Nor did the court tell the jury what uses were and what were not incompatible with the purposes for which the street was established. The second instruction given for the appellee is also objectionable, because it couples the appellee’s tenants with him, and allows damages to be given against appellant for inconveniences suffered by them.
For the errors indicated the judgment is reversed, and the cause is remanded for a new trial upon principles not inconsistent with this opinion.