Henderson Belt R. Co. v. Dechamp, &c.

CASE 36—PETITION ORDINARY—JANUARY 6.

# Henderson Belt R. Co. v. Dechamp, &c.
# Same v. Schlamp.

APPEALS FROM HENDERSON CIRCUIT COURT.

| 95 | 219 |
|----|-----|
| 105 | 613 |

| 95 | 219 |
|----|-----|
| 129 | 128 |
| e129 | 130 |

| 95 | 219 |
|----|-----|
| 132 | 333 |

1. A CITY ORDINANCE GRANTING TO A RAILROAD COMPANY THE RIGHT TO THE USE OF THE STREETS OF THE CITY for the construction and operation of its road, and providing that the company "will pay to any property owner all damages that may be recovered by such property owner, either against said railroad company or against the city, on account of the construction, location or operation of said road, or by reason of the filling, excavating or grading prescribed herein, and said company shall indemnify and save harmless said city from any liability, direct or remote," is to be regarded as a contract binding the company to pay only such damages as were recoverable by the law then in force; the purpose of the contract being to indemnify the city and not to make the company liable for remote, contingent or speculative damages.

2. RAILROADS—INJURY TO ABUTTING PROPERTY.—For an injury to his private rights the owner of an abutting lot may recover compensation from a railroad company, notwithstanding the grant of the right of occupancy by the municipal authorities.

3. SAME—MEASURE OF DAMAGES.—In this action against a railroad company to recover damages for injury to abutting property resulting from the construction and operation of a railroad along the streets of a city, the court properly instructed the jury to find for plaintiffs if they believed from the evidence that the abutting property had been damaged by reason of the cut made by the company, or from the falling of soot and cinders upon the property, or from smoke entering the house,

or from the vibrations or concussions of the running trains, but for a diminution of the value of the property, if any, caused by or resulting from a mere dislike of residing near a railroad, or from smoke, cinders and soot as would fall on the property by reason of currents of wind, they were to allow no damage.

YEAMAN & LOCKETT AND H. F. TURNER FOR APPELLANT.

1. Every owner of property in a city holds it subject to the right of the city to improve its streets, and must submit to any loss or inconvenience occasioned thereby. (Dillon on Mun. Corp., secs. 989–991; Newport Bridge Co. v. Foote, 9 Bush, 272–3.)

2. It does not appear from the circumstances of the transaction, the object of it, or the language used, that the "damages" provided for were other than the damages recognized by law as recoverable of railroads for occupying a street in a city. Excavations made in conforming to a grade established by the city have never been held the subject of damages.

3. It was error to admit testimony of Steele that the running of trains over the railroad shook his residence, which was some distance from that of appellees. (L. & N. R. Co. v. Reutlinger, 9 Ky. Law Rep., 814.)

JAMES F. CLAY AND S. B. & R. D. VANCE FOR APPELLEES.

1. The ordinance and its acceptance by the railroad company constitute a contract between it and the city, and any of its provisions affecting the interests of the citizens or owners of property in the city are intended for their benefit. (Paducah Lumber Co. v. Paducah Water Supply Co., 89 Ky., 340; Duncan v. Owensboro Water Co., 12 Ky. Law Rep., 35; Joy v. St. Louis, 138 U. S., 1.)

2. The ordinance granting to the railroad the right to build and operate its road in the streets, with all its provisions, must be the law of the railroad in the street both as to its rights and privileges and as to its liabilities. (Lewis on Eminent Domain, sec. 116; 2 Dillon's Mun. Corp., sec. 705 and notes; Louisville City Ry. Co. v. Louisville, 8 Bush, 415, 420; 10 Bush, 127, 129; 9 Bush, 127; People v. Barnard, 18 N. E. Rep., 354.)

3. The ordinance was intended to enlarge the right to compensation; otherwise it is meaningless. (Lewis on Eminent Domain, secs. 112, 221, 232, 233, 235, 207–217; Parker v. Boston & Maine R. Co., 3 Bush, 107; Rigney v. Chicago, 102 Ill., 64; Chicago & Western End R. Co. v. Ayers, 14 Am. and Eng. Ry. Cases, 152; Chicago v. Taylor, 125 U. S., 161; Bradey v. New York, &c., R. Co., 21 Conn., 294; Grafton v. B. & O. R. Co., 21 Fed. Rep., 309; Pennsylvania R. Co. v. Miller, 132 U. S., 75; Henderson Bridge Co. v. City of Henderson, 12 Ky. Law Rep., 415.)

Henderson Belt R. Co. v. Dechamp, &c.

It was certainly intended that the abutting property owner should be allowed at least such resulting damage as this court has allowed to the remainder of one's tract of land through which a strip has been taken for the right of way of a railroad.   (Asher v. L. & N. R. Co., 87 Ky., 391.)

4.  The rules for the construction of ordinances are the same as for statutes. (Hopkins v. Mayor of Swansea, 4 M. and W., 621; Gas Company v. City of Des Moines, 44 Iowa, 505.)

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

The city of Henderson by an ordinance of its common council submitted a proposition to the appellant, the Henderson Belt Railroad Company, embracing the terms and conditions upon which the company might construct and operate its railway on certain streets of the city.

The company accepted the conditions and constructed its road.

The track was to be constructed on a grade fixed by the council, the ties were not to be elevated above the surface of the street, and the whole was to be so maintained and operated as not to obstruct travel.   Many matters of detail regulating the manner of making the fills and cuts and providing for easy crossings, etc., are set forth in the ordinance, all looking to the protection and safety of the public.   The meaning of section 3 of this ordinance or proposition is the subject of inquiry on these appeals, and this section is as follows :

" Said company shall pay to any person or property owner any and all damages such person or property owner may sustain by reason of the construction, location or operation of said track or railroad, or by reason of the filling, grading or excavating of the work as prescribed or required herein.   And said company will pay to any person or property owner any and all damages that may be recovered by such person or property owner,

either against said railroad company or against the City of Henderson, on account of the construction, location or operation of said road or track or by reason of the filling, excavating or grading prescribed or required herein, and said company shall indemnify and save harmless said city from any liability, direct or remote, it may incur by granting the right of way as herein specified, or by the construction or operation of said track. Engines or trains of cars shall not stand or remain on any of the tracks in any of the streets or alleys, except Towles street," etc., etc.

The appellees, Dechamp, &c., own and occupy as a residence a lot of ground fronting on Elm street and aligning on Audubon street for some one hundred and sixty-five feet; along the latter street the appellant's road runs.

The appellee, Schlamp, owns a lot of ground on Alvasia and Vine streets and on Vine and Alves streets, the road running along Vine.

It is the contention of the counsel for the appellees, that the elements going to make up the damages ordinarily recoverable from railroads by reason of their lawful occupation and use of a street are enlarged in the present instance by virtue of the provisions of section 3 of the ordinance. And that, in addition to a recovery for proximate and direct damages, the ordinance or contract under which the company entered upon the street authorizes the recovery of *all* damages, and hence includes incidental and remote injuries. It is contended that the instructions to the jury authorized a recovery for injuries excluded by the general rules of law applicable to such cases. If so, the judgment should be reversed.

It seems to us clear that the purpose of the council

was to indemnify the city against all claims for damages arising out of the construction of the work—to save it harmless from every liability, without regard to the nature or origin of it. The point in view was safety to the city, and not the varied and differing causes of action that might accrue to individuals. These were wisely left to the control of general laws.

The contention of counsel would involve the opening up of entirely new sources of litigation, establish new causes of action, and authorize a recovery for merely speculative and remote damages. This phase of the case was carefully considered by the Superior Court, and the learned judge delivering the opinion aptly said : " Conceding to the person or property owner who is injured by the construction and operation of the road the right to rely upon the contract, when the whole contract and the parties to it are considered, its purpose and meaning is plain. The city council was exercising a power granted to it— a power which should always be exercised with caution and never abused. The grading of the street for the road-bed was to be made in accordance with the council's direction, and the evident purpose was to secure the city against damages occurring to individuals by any improper exercise of its power. The members of the council were the guardians of the city—the interests of the city and its people. were, in a great measure, in their keeping. And we concede to them the right and recognize it as their duty, in granting such privileges as are granted here, to guard the interest of the citizen. But certainly it was no part of their duty to alter the established rules of law, and we can not assume that it was their intention to create rights in citizens and 'property owners, and increase the

liability of the company to which they were granting a right, beyond that which the law imposed."

We concur in this construction. Nevertheless, the railroad company, neither with the consent nor the acquiescence of the council, nor in pursuance even of its direction, could so construct its road-bed or fix its grade as to destroy the property of the citizen or materially affect its value. Such damages as were the direct and proximate result of the excavations complained of, and of the falling soot and cinders upon the property, are recoverable upon well recognized principles, and do not depend upon contract. In the first-named case the jury were told to find for the appellees if they believed from the evidence that the abutting property had been damaged by reason of the cut made by the company, or from the falling of soot and cinders upon the property, or from smoke entering the house, or from the vibrations or concussions of the running trains, but for a diminution of the value of the property, if any, caused by or resulting from a mere dislike of residing near a railroad, or from smoke, cinders and soot as would fall on the property by reason of currents of wind, they were to allow no damage. If the smoke or cinders would not fall on the property except by the force of the wind, the jury were told that such damage was necessarily unavoidable in the operation of railroads, and for which the law allows no recovery.

In the second-named case the jury were told to find for the appellee, Schlamp, if his property had been rendered permanently less valuable by reason of being less accessible because of the fills and excavations made in front on the streets, and that for a diminution in value, if any,

caused by a mere dislike of residing near a railroad, they were to allow no damages.

The damage recoverable under these instructions was the direct and proximate result of the appellant's wrongdoing, and the act was not rendered less hurtful to the appellees if authorized by the council. The municipal authorities could not transfer rights which the municipality did not possess, and the easement of access and immunity from falling soot and smoke directly from the engines of the company, were private rights entirely distinct from those of the public, and did not pass under the grant of the council, and for an injury to his private rights the owner of an abutting lot may recover compensation from a railroad company, notwithstanding the grant of the right of occupancy by the municipal authorities. (Elliott on Roads and Streets, 532; Elizabethtown, &c., R. Co. v. Combs, 10 Bush, 382.)

The instructions are substantially correct and the proof of the damages explicit. The judgments are affirmed.