CHIEF JUSTICE LINDSAY
delivered the opinion op the court.
Appellee insists that this is an action of trespass quare clausum fregit. We do not so understand it. The gravamen of his complaint is, that as the owner of a house and lot in the city of Xiouisvill-e, situated on Fourteenth Street, he has suf *672 fered damage by the entry of appellants on that street, the laying down by them of three several railway tracks, and the movement of cars over and along those tracks by locomotives propelled by steam. He does not aver that he had, or was entitled to the actual possession of the street when the appellants entered, nor that he has, at any time since the commencement of the alleged wrongs, been entitled to such possession.
By the rules of the common law, trespass quare clausum fregit could not be maintained, except by a person having the actual possession of the locus in quo, and even by our statutory modifications of those rules, the party complaining must at the least have legal seisin. (Beebe v. Hutchinson, 17 B. Mon. 498.) And it is proper here to say, that we have not been able to find that the act of March 10,1854 (Sess. Acts 18.53-4, p. 167), was in terms or substance continued in force by the General Statutes.
Appellee claims that he was seized in fee of a “certain lot of land lying and situate on the west side of Fourteenth Street, . . . . extending along-the line of said street;” also that the street “was many years ago dedicated as a highway for the use and benefit of all the citizens of the state, and more especially to the owners and occupiers of the contiguous lands; that the fee was not conveyed to the said city of Louisville or the state of Kentucky, but that only an easement — a right of way— was granted to be exercised in the usual mode that streets in a large and populous city were used at the time of said dedication, giving free ingress and egress, and passage for persons on foot, and for such vehicles as then were used in transporting persons or property along said street, or such as might be deemed appropriate for that purpose without materially injuring the property of the land-holders, or unreasonably obstructing or injuriously impairing their right to the use of said street as an elemental part of their property in their *673 contiguous lands, and an incorporeal hereditament annexed thereto.”
He sets out in detail and at great length the inconveniences and annoyances resulting from the occupation of the- street, and the movement of trains of cars over and along the railway tracks, and avers that the walls of his house have been cracked by the shaking caused by the rapid running of heavy trains, and that the smoke, cinders, and burning sparks thrown from the engines, are emptied into his house through the windows and doors, and “says that by reason of said nuisances and said appropriation of said street, and said obstruction of the ingress to and egress from his said property, and the running of the said trains in the manner aforesaid, and by the smoke and sparks aforesaid, and by reason of all the circumstances above stated and described, that the said property of the said plaintiff has greatly diminished in value,’ and he says that the diminution in value of his said property adjacent to said street as aforesaid, occasioned by all the said circumstances, is three thousand dollars, and the said plaintiff says, that he has been and still is damaged by said nuisances, appropriations, and circumstances, to the amount of $3,000,” and he prays judgment for that sum.
It-may be conceded for the purposes of this case, that there is nothing in the record to show that the public owns the fee in the land upon which the street is located, and that the presumption is, that the fee to the center of the street is in the owners of the adjacent and abutting lots of land. (Trustees of Hawesville v. Lander, 8 Bush, 679.)
But the exclusive use of the street is in the public, and the owners of the abutting lots have and can have no possession, or right to the possession, in fact or in law, of the street or any portion of it. An unlawful entry on the street is in no sense an entry on the possession of those lot-owners. The unreasonable appropriation of the street may amount to an obstruc *674 tion of their right to its use as a means of ingress to and egress from their lots, but from the very nature of things can not amount to an injury to their possession. Whatever may be the rule as to the relative rights of the public and the owners; of the fee in ordinary highways to which the exclusive use and possession may not be absolutely necessary for the purposes of the public, there can be no question that in “a large and. populous city” there can be no such right as that of a joint possession by the owners of the fee with the public in the the streets. The owners of the fee may maintain actions against ■ third persons for injuries to the reversion, and are entitled to the minerals under the surface of the ground, and to any profits that may spring from such portions of an ordinary highway as are not in actual use by the public; but these facts do not militate against the conclusion first stated. The municipal authorities of cities and' towns are charged with the duty of keeping the streets free from obstructions, and are invested-with the exclusive right to control them. The owners of the fee are as completely subordinated to the superior rights of the municipality to control, manage, and possess its streets, as the public in general. The owner of a lot fronting on a particular street has a peculiar interest in that street. His title carries with it as an essential incident certain valuable and indispensable services and easements in and over that street, which are: as inviolable as his property in the lot itself. (Railroad Co. v. Applegate, 8 Dana, 289; 17 B. Mon. 772; 9 Bush, 264; 10 Bush, 288 and 382.) But this peculiar right does not depend ■ upon or spring out of the ownership of the fee. It exists as well when the fee is in the public, as when it is in the lot-o.wner, and its existence is in no sense inconsistent with the - exclusive actual possession of the street by the public. At. the common law this would have been an action on the case.
• If the complainant has sustained an injury because of the, alleged unreasonable obstruction of the street, it is an injury ■, *675 to property not tangible, or as he terms it, to “a. necessary appurtenance” to his lot, or to an incorporeal hereditament.
If his tangible property has been injured by the movement of the trains of cars over and along the railway tracks placed in the streets, or by the noise of such moving trains, or by the smoke, sparks, and cinders escaping from the engines by which they are propelled, the damages are mediate and consequential, and in all cases of' injuries to incorporeal and intangible property, or of consequential damages, case was the proper action. (Chitty’s Pleading, vol. 1, side-pages 126 and 127; 2 Dana, 378.)
The appellants are not mere trespassers; they entered upon the street with the approval and express consent of the city authorities, and they have the right, so far as the genera! public is concerned, to keep and maintain their railway tracks, and to pass their trains over them; but notwithstanding this license, if the said tracks had been so located as to unreasonably obstruct appellee’s means of ingress and egress over Fourteenth Street to and from his lot, or if his houses have been injured by having smoke, sparks, or cinders thrown or blown into or upon them, or if their walls have been cracked by the rapid movement of heavy trains of cars, he is entitled to recover for the damages directly resulting from all or any one or more of these causes. (10 Bush, 288 and 382; and 9 Bush, 264.)
We do not, however, regard this as a case in which the rules applicable to the taking of private property for public use are to govern. The right of a contiguous lot-owner to the free use of the street on which his property binds, is no doubt within the constitutional protection intended to be afforded the citizen against the public. But this right can not be said to have been taken from the appellee. The street has not been wholly appropriated. It is still, to some extent, open to the general public, and the appellee only asserts that his free and reasonable use thereof has been impaired, and that in using it *676 he must take the risk of being run down by the passing trains. The facts which he sets out show that the street is certainly free from trains at least one third of each day. Hence, while appellee’s right of user may have been greatly impaired in value, it has not been absolutely taken away.
The measure of the damages which the appellee may recover, if entitled to recover at all, is the diminution in the value of his houses and lot, occasioned by the location of appellee’s tracks and the uses to which they were authorized to put them by the grants from the city authorities. (10 Bush, 882; 9 Bush, 264.)
This seems to be the theory of the appellee, and also of the court below. But the rights of the appellants were prejudiced by the failure of that court to prescribe the rule by which the jurors were to estimate this diminution. If the location afid operation of the roads in front of appellee’s house diminished its value say twenty per centum, then the diminution should be proportioned to its value just preceding the time at which it became generally known that Fourteenth Street had been selected as the line of the roads, for the reason that if the location of the road increased the value of the property, appellants ought not to be required to pay appellee twenty per centum of the enhancement resulting therefrom. Upon the other hand, appellants contend that this supposed enhancement of vendible value is, or ought to be, a controlling element in • the estimation of damages, and that if the house and lot of appellee had a greater vendible value immediately after the occupation of the street than it had immediately before, then there was no diminution, and nothing ought to be recovered. This rule is incorrect. The jury should ascertain what the value of the property was just before it became generally known that the appellants’ roads were to be located in front of it, and then determine what proportion of that value was taken from the house and lot by the obstruction of the street and the *677 noyances incident to the movement of engines and trains of cars along and over appellants’ roads. This rule is simple, and it strips the question of the complication and confusion which must necessarily arise in an attempt to distinguish between the natural increase of the value of the particular piéce of realty and the increase attributable to the location of the' line of railway.
Benefits arising directly from or out of an unauthorized act may sometimes be considered in the determination of the sum to be recovered by the injured party, but in all cases these benefits must be direct and immediate. They must be confined to the proximate consequences of the act complained of, and be of like kind with the opposite injuries for which the recovery is sought.
In a case where land had been overflowed by the erection of a mill-dam, the Supreme Court of Massachusetts aptly said, “The damages are given only for the injury done to the land by flowing, and any reduction or set off to that damage must consist from benefits arising from the same cause, that is, from flowing the land.” So in this case, if the railway affords appellee increased or additional facilities for ingress or egress to and from his house and lot, or for the movement of articles in which he may deal, or supplies which it is necessary he shall procure, this benefit may be taken into consideration in estimating the damages he has sustained. But supposed benefits arising from the increased general prosperity of the neighborhood, and the enhanced vendible value of real estate in the particular locality, even if it be a recognized incident to the location of the public work, are too remote and contingent to be taken into consideration in the question of damages to appellee’s houses and lot resulting from the special injuries to which he has been subjected. Such supposed benefits flow not immediately from the railways obstructing the street, nor from the movement of the cars over them, but from the investment of capital in a work of general public utility, and the enter *678 prise and activity of persons attracted, and specially benefited by their proximity to the line of railways.
These benefits and advantages the appellee shares in common with persons owning lands near enough to be influenced by' the general prosperity, and yet not upon the immediate line of the roads, or not injuriously affected by the causes operating to his prejudice. And his right to be compensated for the special injuries he may sustain can not be denied him because of the mediate and consequential benefits resulting to him in common with the local community at large. (Palmer Co. v. Ferrill, 17 Pick. 58; Brown & Brower v. Merrill, 3 Chandler’s Wis. Reports, 46.)
The plea of limitation can not avail in this case. The appellee, by this action, in effect consents that the appellants may continue for all future time to use the street as they are now using it, and in consideration therefor to accept such judgment as may be herein rendered. (10 Bush, 382.)
Appellants had not secured this right by prescription when this action was commenced, and time had not then barred appellee’s right to seek relief by writ of injunction, nor to sue for the damages resulting from the continuing trespass.
The court erred in permitting appellee to prove that other houses, several squares distant, had been injured by smoke and cinders, and by being shaken by the passing trains. The evidence should be confined as nearly as practicable to the property alleged to be injured.
It also erred in admitting evidence tending to show that engines were sometimes run at a high and dangerous rate of speed along the street, and to prove that a man had been killed in the street by one of appellants’ trains. Appellants may be required to answer criminally for such abuses of their privilege or license, or to answer.in a civil action to airy one whose property or person may be injured by their misconduct in this regard, but these abuses can be considered for no purpose *679 whatever in the ascertainment of the amount of damages the appellee ought to recover in this action.
Judgment reversed, and cause remanded for a new trial on principles consistent with this opinion.