CASE 78—PETITION EQUITY—MAY 21.

# Fulton, &c., v. Short Route Railway Transfer Company, &c.

APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

1. ELEVATED RAILROADS.—A company chartered to build a "railroad" merely, has the right to elevate it wherever the character of the country makes it either convenient or essential to do so.

2. SAME.—An amended charter of a railroad company referring to city ordinances requiring the road to be elevated at the street crossings,

Fulton, &c., v. Short Route Railway Transfer Company, &c.

must be deemed a legislative recognition of the right to " elevate " a portion of the road.

3. EMINENT DOMAIN.—When private property has been taken for a specific public use, and compensation made, it should not be used for a foreign purpose without a new legal taking, or the consent of the party from whom it was derived; but it may be applied to any new mode of user tending to the primary or general purpose. Therefore, a railroad may be laid out over a highway, provided it is so laid out and constructed as not to be incompatible with the use of the highway in the other usual modes of passage and conveyance.

4. THE CONSTRUCTION OF A RAILROAD ALONG A STREET is not, *per se*, an encroachment upon the individual right of the abutting lot-owner, and whether he can complain depends not upon the fact of the existence of the railroad, but the manner of its construction and operation. If he is thereby deprived of the reasonable use of the street, he may appeal to the courts for relief, but if he is merely inconvenienced thereby, and suffers some remote consequential injury, he is without relief.

In this case it is held that an elevated railroad, the construction of which is sought to be enjoined, will not, by reason of the manner of its elevation, be an *unreasonable* obstruction of the street.

5. SAME—INJUNCTION.—When the construction and operation of a railroad over the streets of a city result in special and substantial injury to abutting lot-owners by reason of smoke and cinders, the cracking of walls, etc., they may recover for damages directly resulting from such causes; but until the road is built, it is a matter of mere speculation whether any such injury will result, and as the law affords an adequate remedy for such injuries, and their character or extent can not be ascertained until the road is built, the chancellor will not interfere with the construction of the road merely because such injuries *may* result.

B. F. BUCKNER FOR APPELLANTS.

1. There is no authority for the building by appellees of an *elevated* railway.

The grants of franchises, and special and peculiar privileges, are construed most strictly against the corporation, and nothing will be deemed to be granted unless expressly named, or resulting by necessary implication from the powers expressly conferred. (Fertilizing Co. v. Hyde Park, 97 U. S., 666; Morawetz on Corporations, sec. 153, and cases there cited.)

2. When the fee in the land occupied as a street is in the abutting proprietor, no *new* servitude can be imposed on his property without his consent. (2 Dillon on Municipal Corporations, sec. 633, 3d ed.; Kelly v. Donahoe, 2 Met., 482.)

vol. 85—41.

Fulton, &c., v. Short Route Railway Transfer Company, &c.

And the appropriation of the street to the uses of a railroad is a *new* servitude within this rule. (Kemper's Case, 14 Bush, 87; Rolling Mill Case, 3 Bush, 425; Lexington Turnpike v. McMurtry, 3 B. M., 516; The Applegate Case, 8 Dana, 289; Cosby's Case, 10 Bush, 294; Esterle's Case, 13 Bush, 667; Cooley on Const. Limit., sec. 550, 2d ed.; 2 Dillon on Munic. Corp., secs. 703, 704; Heard v. Brooklyn, 60 N. Y., 242; Redfield on Railways, 3d, ed., sec. 76 and note; Indianapolis R. R. Co. v. Hartley, 67 Ill., 439; Imlay v. Union Branch R. R. Co., 22 Conn., 255. The Brown Case, 17 B. M., 763, and Newport Bridge Co. v. Foote, 9 Bush, 268, commented on.)

As appellants own the land on both sides of Water street, they own the *fee* of the entire highway. (Angell on Highways, sec. 313; 2 Dillon on Municipal Corp., 3d ed., note 1, page 632, and cases there cited.)

3. Independently of the question of ownership of the soil, the appellants have rights incident to the ownership of property abutting on the land granted to the use of the railway company which have been invaded by the use of this grant in two distinct ways. 1. It interferes with their rights of property in the street, such as the free right of ingress and egress, and the right to receive light and air across the street without obstruction. 2. It materially and seriously injures their property itself, and their right to its ordinary use and enjoyment by jarring their buildings and throwing smoke, cinders, etc., into their houses, and for these substantial and material injuries, not common to the general public, they may maintain an action. (Applegate's Case, 8 Dana, 294; Cosby's Case, 10 Bush, 291; Combs' Case, 10 Bush, 387; Rolling Mill Case, 3 Bush, 416; Kemper's Case, 14 Bush, 87-91; Esterle's Case, 13 Bush, 667; 2 Dillon's Munic. Corp., secs. 702-3; Story v. N. Y. Elevated R. R. Co., 90 N. Y., 122; Corning v. Lowerre, 6 Johns. Ch'y, 439.)

4. Injunction is a proper remedy in the case disclosed by the record. (Wahle v. Reinback, 76 Ill., 322; Commonwealth v. Pittsburg R. R. Co., 24 Penn. St., 159 (62 Am. Dec., 372); Frewin v. Lewis, 4 Mylne & Cr., 254-5; Oldaker v. Hunt, 6 De Gex, M. & G., 589, 55 Eng. Ch'y; Roberts v. Easton, 19 Ohio St., 88; Hilliard on Injunctions, 25; Parker v. Cotton & Woolen Co., 2 Black, 551; Crump v. Lambert, L. R., 3 Eq., 409; Broadbent v. Imperial Gas Co., 3 Jur., U. S., 221; Goldsmith v. Tunbridge Wells Co., L. R., 1 Ch'y, 349; Alien v. Martin, 20 L. R. Eq., 462; Applegate's Case, 8 Dana, 308.)

TEMPLE BODLEY ON SAME SIDE.

1. The use of Water street by the plaintiffs and the public is *unreasonably* interfered with by the construction of appellee's road.

In every case the question whether a particular railroad is an unreasonable obstruction is one of fact to be determined by the evidence in that particular case. (Applegate Case, 8 Dana.)

Fulton, &c., v. Short Route Railway Transfer Company, &c.

2. Appellee's road will cause material injury to plaintiffs as the owners of adjoining houses and lots, and for such injury they are entitled to redress. (L. & N. R. R. Co. v. Hodge, 6 Bush, 141; Combs' Case, 10 Bush; Esterle Case, 13 Bush; Kemper Case, 14 Bush.)

The enhancement of value is not an element affecting the claim of plaintiffs for damages. (Esterle Case, 13 Bush; 17 Pick., 58; 3 Chand., Wis. Reports, 46.)

As a matter of fact, however, the evidence shows that the alleged enhancement will not exist in this case.

3. An injunction will lie for the unreasonable obstruction of the street and also to restrain the substantial interference with the enjoyment of plaintiffs' lots.

The common law rule was not to give damages for future injuries, but only for acts and consequences of acts already done. (Greenleaf's Ev., sec. 474; Bacon's Abr., "Damages," (D); 1 Chitty's Pl., 399; Sedgwick's Measure of Damages, [144]; Trigg v. Northcutt, 6 Litt., 416.) For this reason courts of equity established a jurisdiction to prevent future injuries of a continuing nature. And this jurisdiction is in nowise taken away by the mere fact that the courts of law have extended their legal remedy of damages to cover future apprehended injury. (1 Story's Eq., sec. 64i; Pomeroy's Equity, sec. 257, and Note, and sec. 258; The DuPont Case; Crump v. Lambert; Hahn v. Thornberry, 7 Bush.)

WOOLLEY & BUCKNER OF COUNSEL ON SAME SIDE.

THOMAS W. BULLITT FOR APPELLEE.

1. A railroad company occupying a street under legislative authority is liable to the abutting property-holder only in the event that its road shall exclusively occupy or *unreasonably* obstruct the street. (Lex. & Ohio R. R. v. Applegate, 8 Dana, 289; Wolf v. Cov. & Lex. R. R. Co., 15 B. M., 409; Lou. & Frankfort R. R. Co. v. Brown, 17 B. M., 772; Newport & Cin. Bridge. Co. v. Foote, 9 Bush, 264; E., L. & B. S. R. R. Co. v. Combs, 10 Bush, 382; Cosby v. O. & R. R. R. Co., 10 Bush, 299; J., M. & I. R. R. Co. v. Esterle, 13 Bush, 675.)

The cases of Story v. The Elevated Railway, 8 Am. and Eng. Railway Cases, 596, and Imlay v. Railroad Co., 26 Conn., commented on and distinguished from the Kentucky cases.

The evidence in this case fails to show an *unreasonable* obstruction of the street.

2. It follows from the principle laid down as above that the liability of a railroad company occupying a street is no greater if the *fee* is vested in the abutting property-holder than if it is vested in the city (Bridge Co. v. Foote, 9 Bush, 264; Cosby v. O. & R. R. R. Co., 10 Bush, 299; J., M. & I. R. R. Co. v. Esterle, 13 Bush, 673.)

2. An elevated railway is no more an invasion of the plaintiffs' proprietary rights than a surface railroad would be.

3. A charter conferring authority to build a railroad authorizes the building of an *elevated* railroad, and in any event such a charter confers the right to elevate the road wherever the topography of the ground renders such elevation essential or convenient.

A. BARNETT ON SAME SIDE.

I. An injunction will *not* be granted.

1. As matter of right, but in sound discretion to reach the ends of justice and fair dealing. (Kerr, side page 6; High, sec. 16; Hilliard on Injunctions (3d ed.), secs. 16, 18, 20, 21 (chap. 1.)

2. Unless the the right is clear in law and facts. (Kerr, 328, 340; Hilliard, sec. 45, chap. 1.) And, therefore, where the application is supported by mere oath of party or if mere opinions are given. (Hilliard, sec. 45, chap. 1; *Ibid.*, sec. 86a, chap. 1; Story's Equity, sec. 924a.)

3. Where plaintiff is not entitled to relief sought. (Hilliard, sec. 71, chap. 1.)

4. Where the threatened mischief can be adequately compensated in damages. (Hilliard, sec. 23, chap. 1; Pussey v. Wright, 31 Penn., 396.)

5. Where injunction, if granted, will inflict unnecessary mischief to defendant and no corresponding benefit to plaintiff. (Hilliard, sec. 39; Note A, authorities cited, sec 43c; Jones v. Newark, 3 Stock., 452; Torry v. Camden, &c., 3 C. E. Green (N. J.), 293; Morris v. Pruden, 5 C. E. Green, 530; High, sec. 13, sec. 489; Corry v. Y. & N. R. R., 3 Hare, 593, Eng. Ch'y; Shrewsbery v, Shrewsberry, 1 Simons, 430; Att'y Gen'l v. Major, 1 Myl. & Cr., 343; Pettibone v. LaCross, 14 Wis., 443; Higbee v. Camden, &c., 20 N. J. Eq., 435; Richards' Appeal, 57 Penn. St., 105; Eastman v. A. Mnf. Co., 47 N. H., 71.)

6. Where justice can be done to plaintiff without. (Whitlesey v. H. & P. R. R. Co., 23 Conn., 421.)

II. The alleged threatened injury can be and may be answered for in money damages. (J., M. & I. v. Esterle, 13 Bush, 671; Cosby v. O. & R. R. R. Co., 10 Bush, 291; E., L. & B. S. R. R. Co. v. Combs, 10 Bush, 382; Newport v. Foote, 9 Bush, 264; Wolf v. Cov. R. R., 15 B. M., 404; L. & F. v. Brown. 17 B. M.; L. & O. v. Applegate, 8 Dana; Johnson v. O'Neal, 3 Head; Kerr, 341, 343, 344.)

III. Even if appellees own the fee to middle line of street it makes nothing in their favor. (Cosby v. O. & R. R. R. Co., 10 Bush.)

But they do not so own. (Applegate v. L. & O., 8 Dana; 8 B. M., 238; Covington v. Frecking, 8 Bush, 126; Hawes v. Hawesville, 6 Bush, 232; McMillin v. Brown, 1 A. K. Marsh.)

IV. Plaintiffs must allege and prove special injury to each, and peculiar to himself, over the general public. (Hatch v. V. C. R. R. Co., 28 Vt.,

Fulton, &c., v. Short Route Railway Transfer Company, &c.

142; Osborn v. B. C. R. R., 5 Blatch. (U. S.), 366; McGowan v. Whitsides, A. L. R. U. S., 9, 454, and Kentucky cases *supra*.)

V. The erection of a trestle work in a street will not be enjoined, preliminarily; because, if on final hearing plaintiff's peculiar rights are invaded, the invasion can be compensated for. (Shumire v. St. P. & P. R. R. Co., 8 Minn., 118.)

VI. Good faith and prompt action must appear for plaintiff. If he allows defendant to proceed in expending money on the faith of his rights, or on the idea that plaintiff will waive, an equity against a preliminary injunction arises, and the court may remit him to his action for damages or ascertain the damages itself and enforce payment as purchase money. (Kerr, side pages 205, 206, 298, 349, 406; 42 High, sec. 7.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

The charter of the Short Route Railway Transfer Company, granted by the Legislature in 1873, provides :

Section 2. " Said corporation is hereby granted the exclusive privilege to build, construct, maintain and operate a railway transfer company, by steam or animal power, for the transportation of passengers and freight, by the car load or otherwise, including that portion of the city of Louisville north of Main street, from the east side of First street to the west side of Fourteenth street, for a period of ninety-nine years, dating from January 1, 1873."

Section 3. " Said corporation shall have the right, by and with the consent of the general council of the city of Louisville, to the use of or right of way to such streets and alleys, and such portion of the city's wharf within the limits named in the second section of this act, as the interests of said corporation may require, and in such manner, and under such reasonable restrictions and conditions, as may be agreed upon between said corporation and the general council of the said city of Louisville. "

Subsequent sections grant to the corporation, among other privileges, the right to connect its track with that of any other railroad terminating in the city of Louisville, and give to any shipper along its route the right to side-tracks and switches upon such terms as may be agreed upon between him and the transfer company.

A difference arose between it and the city as to the location of the road; and in the compromise it was agreed, among other things, that the road in crossing First, Second and Third streets should be so elevated as to permit vehicles to pass under it.   To do this it became necessary to build an elevated railway along the Ohio river front of the city; and the company being about to do this, the appellees, who are abutting lot-owners, brought this action to enjoin it from either constructing or operating such a road along and over Water street, from the middle line of First street to the middle line of Third street, upon these grounds:

First. That no legislative sanction had been given for the building of an *elevated* railway.

Second. That the appellants owned the fee to the center of the street adjoining their lots, subject only to the easement of the public in it as a street; and that any legislative grant of the right of way over it to the railway company, without providing compensation therefor, was in violation of the constitutional provision as to taking private property for public use.

Third. That aside from the ownership of the soil, they, as abutting lot-owners, had a right to the unobstructed use of the street for travel, and for the purpose of ingress and egress; to receive light and air thereby; and to enjoy their property free from any inconven-

iences or injury, *special* to them, such as the jarring or substantial injury to their buildings ; the deprivation of light or air ; the throwing of smoke, sparks or cinders into and upon the houses already upon some of the lots, or those which might be built upon the vacant ones ; the disturbance to the occupants arising from the noise of passing trains and the invasion of all privacy by reason of their proximity ; and that all these rights would be illegally invaded and destroyed by the building of the road, and that injunction is the appropriate remedy for their protection.

The word "elevated" does not occur in the charter.    It authorizes the company to construct and operate "a railroad" merely.    It is, therefore, insisted that, considering the time when the charter was granted, it is improbable that the Legislature intended to authorize the construction of any kind of a railway save a surface one ; that this intention is manifest from the charter provision as to side-tracks and switches, and that corporation grants must be construed with all the strictness compatible with their execution.

It appears, however, that only a portion of the appellee's road is "elevated ;" and from the first introduction of railroads, portions of them have been elevated by reason of the topography of the country, or liability to floods, or the grades desirable in cities for the convenience and safety of the public.    Certainly a company chartered to build "a railroad" merely, would have the right to elevate it wherever the character of the country made it either convenient or essential ; and the evidence shows that if this road were a surface one from First to Tenth street, it would frequently be submerged by the floods of the Ohio river.

After the compromise was effected between the city and the company, and on April 1, 1882, the Legislature amended the charter in various respects, and this amendment refers to the ordinances of the city of Louisville, which, among other things, required the road to be elevated at the street crossings. It is true that it merely provides, that any provisions in them in conflict with the amendment shall be void; but we must presume that it was enacted with the fact in view that a portion of the road would have to be elevated. In interpreting and giving effect to a statute, the necessity, occasion, history of the times, and probable object of it, are to be considered; and while this amendment did not re-enact the city ordinances relative to the elevation of the road at the street crossings, yet it recognized the right of the company to build a road, which those ordinances, thus referred to, required to be elevated, and which the city council, by virtue of section 3 *supra*, had the power to enact. Even if the power to build the road was questionable prior to this additional legislation, yet this legislative recognition of the right placed it beyond doubt.

It must be presumed that the appellants own the fee in the street, subject to the *use* by the public; and the question presents itself whether the easement existing by virtue of the dedication as a street is of the same *nature* as that granted to the company by the Legislature. Its power to appropriate a part of a common highway to the purposes of a railroad, without making provision for compensation to the owner of the fee, has been a fruitful subject of judicial conflict. It has been urged that it is an additional burden; a new and

distinct servitude upon the estate, inconsistent with the original dedication, and cannot, therefore, be imposed without compensation to the owner of the fee. Upon the other hand it is said, that it is consistent with the dedication ; that there is an identity of uses ; and that the use of a part of a street by a railway does not exceed the limit of the easement already belonging to the public. This conflict of opinion mainly arises from a difference of view as to the uses contemplated by the dedication of a street to public use.

Upon the one side cases may be found holding that because the term "street" had acquired its meaning before railroads were in existence, that, therefore, it cannot be presumed this character of use was intended in the dedication ; and if allowed, that the limit of the easement is overstepped and the private property of the owner of the fee taken for public use, which, unless compensation be afforded, is inhibited by the Constitution. In conflict with this view many cases may be found, which hold that the dedication of a street to public use contemplates no particular mode of travel ; that it embraces not only those then existing, but any that may spring up in this age of invention and with advanced civilization ; and that a railroad, being but a new mode of travel, is consistent with the uses contemplated by the dedication, and does not overstep the limits of the easement already in existence.

In determining the proper uses of a highway it seems to us to be immaterial whether the abutting owner has the fee subject to the easement or not. The public right embraces all modes of travel consistent with the

intended use.  If compensation has been made for the easement, the subsequent appropriation to another mode of use within the limit of the primary purpose, or one of a like kind, certainly should not require further compensation.  In this age of advancement a rule confining it to a precise mode of use would be unreasonable.  It has even been held that there is no new taking when, under legislative sanction, a plank road or a canal is converted into a different kind of highway, as for instance a railroad ; and some jurists have contended that when private property has been once taken for public use, and compensation made, the Legislature may apply it to any public use, irrespective of the special purpose for which it was taken.  This view is based upon the idea that, in practice at least, whether the fee or an easement merely is acquired, the full value of the land taken is given as compensation ; but this doctrine is fraught with danger to private right, which, although it may be that of the humblest citizen, it should be the pride of the judiciary to uphold ; and it seems to us that where a grant has been made for a specific use, that the subject of it should not be used for a foreign purpose without a new legal taking or the consent of the party from whom it was derived ; but that it may be applied to any new mode of user tending to the primary or general purpose.

It was said by the Supreme Court, in the case of Barney v. Keokuk, 94 U. S., 340 : "On the general question as to the rights of the public in a city street, we can not see any material difference in principle with regard to the extent of those rights, whether the fee

is in the public or in the adjacent land-owner, or in some third person. In either case the street is legally open and free for the public passage, and for such other public uses as are necessary in a city, and do not prevent its use as a thoroughfare, such as the laying of water-pipes, gas-pipes and the like."

Pierce on Railroads, page 234, says: " The purpose of opening a highway or street is to provide the public with a right of passage for persons on foot or riding in carriages or other kinds of vehicles. The use for which this public right is obtained is not confined to the same species of vehicles, drawn by the same kind of power that prevailed at the time of the dedication or appropriation, but admits of the passage and re-passage of such other vehicles, operated in such a mode and by such forces as an advanced civilization may require for the general convenience. The improved method of conveyance may incidentally increase or depreciate the value of property on the highway; but provided the right of ingress and egress, of passage and re-passage, is left reasonably free to the adjoining owner, the injury is one which the law does not recognize. A railroad laid out over or upon a highway or street under proper legal authority is within the legal intent of the original sequestration or dedication, and is not an invasion of private right, entitling the owner to compensation by virtue of the constitutional prohibition, provided it is so laid out and constructed as not to be incompatible with the use of the highway in the other usual modes of passage and conveyance. It is not necessarily a nuisance, even in a large city, although it may, to a certain extent, interrupt the

free passage of other kinds of vehicles; and unless unreasonable, or permanently exclusive in its occupation of the highway, when authorized by competent authority, it is not an invasion of private rights.'' The writer cites numerous cases in support of the text.

The design of a railroad is to facilitate travel. It, therefore, subserves the object of a street dedication instead of destroying it. It may, therefore, under legislative sanction, have a joint occupancy of a street with other modes of travel having the same end in view ; but it can not occupy or use it to the unreasonable exclusion or obstruction of such other modes. The limitation upon the public right is that the appropriation of the street must not be inconsistent with the end for which it was established.

Whether the abutting lot-owner owns the fee in the street, subject to the public use, or does not, he, as such adjacent proprietor, has, however, a peculiar private right in the street which attaches to his lot. He has a peculiar use in the street as appurtenant to his tenement, in order that he may enjoy it. This right is as much his property as the lot itself. He can claim no damage by reason of mere inconvenience or a consequential decline in value of property or rents arising from the repair of the street ; but there can be no such exclusive appropriation of it, even under legislative authority, as to deprive him of its reasonable use. He is entitled to its reasonable use for all the ordinary modes of passage. This is an easement attaching to his adjoining lot, an incident of his title to it, and he can not be deprived of it without compensation. He, however, holds his property subject to the appropria-

tion of the street by the public to such means of facil-
itating travel and commerce as will most redound to
the public good ; and it is only when this appropria-
tion becomes destructive of the purposes for which
the street was established, and he is deprived of its
reasonable use for such purposes, that he can com-
plain.    Indeed, the right under legislative authority
to permit the construction and operation of a railroad
by steam along or upon a street is not now an open
question in this State, however much conflict of au-
thority may exist elsewhere ; and this without regard
to whether the fee subject to the public use is in the
adjoining owner or not.    Beginning with the case of
the L. & O. Railroad Company v. Applegate, &c., 8
Dana, 289, followed by the cases of Wolf v. C. & L.
R. R. Company, 15 B. M., 409 ; L. & F. R. R. Com-
pany v. Brown, 17 B. M., 772 ; Newport & Cincinnati
Bridge Company v. Foote, 9 Bush, 264; Cosby v. O.
& R. Railroad Company, 10 Bush, 288; E., L. & Big
Sandy R. R. Company v. Combs, 10 Bush, 382; and
the J., M. & I. R. R. Company v. Esterle, 13 Bush, 675,
this doctrine has been repeatedly announced, and
must now be regarded as firmly established in Ken-
tucky, and we think it is supported by reason and
public necessity, while at the same time individual
right is preserved.

It follows that the construction of a railroad along
a street is not, *per se*, an encroachment upon the indi-
vidual right of the abutting lot-owner, and whether he
can complain depends not upon the fact of its exist-
ence, but the *manner* of its construction and operation.
If he is thereby deprived of its *reasonable use*, he may

appeal to the courts for relief; but if he is merely inconvenienced thereby, or suffers some remote consequential injury, it is *damnum absque injuria.*

The structure in this case at the point where it is sought to enjoin its construction will be about thirteen and one-half feet high, supported by iron pillars sixteen inches in diameter, and from twenty-five to thirty feet apart; and where they are in the street there is ample road-way upon each side of them, while, where they are in the sidewalk, they leave ample room for passage, and we fail to see that there is any unreasonable obstruction or exclusive appropriation of the street, while the character of the proposed structure is such that it is not likely to materially interfere with the passage of either light or air.

Before leaving this branch of the case, it is proper to suggest, that in the cases of the L. & F. R. R. Company v. Brown, Newport & Cincinnati Bridge Company v. Foote, and Cosby v. O. & R. R. R. Company, *supra*, the railroad was elevated either by a solid wall or an embankment which was *pro tanto* an exclusive appropriation of the street; but as it was not *unreasonably* obstructed, the complaint of the abutting lot-owners was not sustained.

The road, the construction of which is now sought to be enjoined by reason of its manner of elevation, will afford less obstruction than did the building of the roads in those cases.

It is urged, however, that it will be *specially* injurious to the adjacent lot-owners, and in a *substantial* degree, because it will jar their buildings; weaken their foundations; throw sparks, smoke and cinders

into them by reason of their proximity; destroy their privacy, and render them untenantable ; and that these *substantial* injuries *peculiar* to them, and to which the general public are not liable, authorize the interposition of preventive equity.   It is true it is not the amount of pecuniary injury which authorizes such relief.   If the injury goes to the substance of the right, and is of such a character that reasonable redress can not be had at law, the chancellor will, with the arm of equity, stay the impending wrong.

Whether any special and substantial injury will result to the adjoining owners in this instance is, however, as yet a mere matter of speculation ; and if any, its character or extent can not now be ascertained.   If such should accrue, its extent can be much better estimated after the road is in operation ; and, at most, it would be a matter of mere damage, for which the law affords an adequate remedy.

Undoubtedly, if the structure shall be so located as to unreasonably obstruct the abutting lot-owner's means of egress and ingress from and to his lot; or, if he suffers substantial injury by having smoke, sparks or cinders thrown into his house ; or its walls be cracked by the movement of heavy trains, he would be entitled to recover for the damages directly resulting from such causes.

This is because a private right would then be invaded, and a direct substantial damage sustained.   (J. M. & I. R. R. Company, &c., v. Esterle ; and E. L. & Big Sandy R. R. Company v. Combs, *supra*.)

It was said, however, in the case of L. & O. R. R. Company v. Applegate, &c., *supra :*

"But both public policy and a long series of adjudged cases require that a public improvement so beneficent in its general operations and results, and more especially when, as in this case, sanctioned by the Legislature and the representatives of the local public, should not be destroyed or suspended by the injunction of a chancellor, unless strong reasons for doing it be conclusively manifested."

This reason applies with peculiar force in this instance. The proposed work is one likely to redound largely to the public interest, and that of a commercial metropolis. The road will connect the railroads coming into the city upon one side with those reaching it upon the other, thus supplying, as is shown by the testimony, a now much needed connection; while, upon the other hand, it is as yet a matter of conjecture what injury, if any, will accrue to the lot-owner; and if any, he is not remediless.

The law, of course, will not override individual right in order that a public benefit may accrue; but, under such circumstances, the facts should be clearly shown, and the ground made manifest before the chancellor should interfere.

Judgment affirmed, Judge Lewis not sitting.