Ferguson &c., v. Covington & C. El. Railroad & Transfer & Bridge Co.

CASE 89—ACTION FOR INJUNCTION—JUNE 8.

# Ferguson, &c., v. Covington & C. El. Railroad & Transfer & Bridge Co.

APPEAL FROM KENTON CIRCUIT COURT.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS.   AFFIRMED.

RAILROADS—CONSTRUCTION IN STREET—INJUNCTION—LIMITATION OF ACTION—ACQUIESCENCE.

Held:   1. Where a railroad was constructed in a street under legislative and municipal authority, though the entire width of the street was used so as to interfere with its use for the passage of persons or vehicles, the right of an abutting property owner to enjoin the railroad company from using so much of the street as may be necessary for the passage of vehicles accrued when the road was put in operation, if injunction was the proper remedy, the right was barred after the lapse of five years from that time, under Kentucky Statutes, section 2515, providing that "any action for trespass on real or personal property, . . . or any injury to the rights of plaintiff, not arising on contract, shall be commenced within the five years next after the cause of action accrued."

2. The statute of limitations applies to all actions, whether at law or in equity.

3. Where an abutting property owner has for a considerable number of years acquiesced in the existing situation and operation of railroad tracks in a street, injunction does not lie in his favor to compel the railroad company to remove or to cease to use any of its tracks.

Ferguson &c., v. Covington & C. El. Railroad & Transfer & Bridge Co.

HARVEY MEYERS FOR APPELLANTS.

SIMRALL & GALVIN FOR APPELLEES.

(No briefs in record.)

OPINION OF THE COURT BY JUDGE DURELLE—AFFIRMING.

Appellants brought suit alleging that they were the own-
ers of a lot on the northwest corner of Twelfth and
Washington streets, in Covington, fronting 190 feet on.
the west side of Washington street; that the appellee,.
jointly and with others, had wrongfully, and without ap-
pellants' consent, constructed, maintained, and operated
certain railway tracks along and over that part of Wash-
ington street in front of appellants' property, so that the
entire street at that point is covered with tracks used by
steam-railway locomotives and cars, to the exclusion of
all other traffic thereon; that the two tracks on the west-
ern side of the street are so constructed, maintained, and.
operated by the appellee jointly as to cover and occupy
the entire western half of the street, up to and adjoining
the sidewalk on that side, to the exclusion of all vehicle
traffic thereon, so that the ends of the ties on that side are
within twelve inches of the sidewalk, that the occupation
of the street and the western half thereof is a purpresture,
and the street can not be used for purposes of ingress to
or egress from the property, or used. for ordinary vehicle
traffic, by appellants or the public, and ordinary vehicles.
can not approach the property on Washington street; that.
the tracks are so continuously used day and night as to
make it impossible and unsafe for any vehicle or other
traffic to be carried on over the street in front of the prop-
erty; and that appellants have no adequate remedy at law
for redress of the wrongs and injuries complained of. The
prayer of the petition is for a perpetual injunction re-

straining appellee from using all the street, or from using and occupying so much of it by railroad tracks as may be necessary for ordinary vehicle traffic upon and over it.

The answer, as amended, is a traverse of practically all the averments of the petition; a plea of the five-year statute of limitations, averring use and operation of the tracks in their present condition and situation for more than five years before the bringing of the suit; an averment that Washington street at that point had never been graded, or in any way improved, by sidewalks or otherwise, or used by the public or individuals as a street; and a plea that appellants are estopped to require appellee to remove the tracks, averring that the street had been used and occupied by railroad tracks, substantially as it was occupied at the time of the bringing of the suit for more than forty years past; that they had been reconstructed at great expense upon the west side of Washington street, in the same manner and position which they occupied at the time of the bringing of the suit, in 1888, long before the purchase of the lot in question by appellants, with the full knowledge and acquiescence of appellants' grantors, and that appellants bought the lot with the full knowledge of the manner in which the tracks were laid, maintained, and operated, and of the manner in which such operation affected the property purchased.

By their reply, appellants deny the affirmative allegations of the answer, and allege that the appellee bridge company was controlled by the officers of the Chesapeake & Ohio Railway Company as part of the system of that company, and that, after its acquisition by the railway company, the bridge company, "fraudulently claiming and asserting the right by municipal and legislative grant to do so, began to extend its tracks, and so surreptitiously

lay and construct additional tracks, in Washington street," to the exclusion of all other use or occupation thereof, and that appellants' "grantors believed the false and fraudulent representations and claims of defendants that they had authority to lay their tracks over and occupy the entire street."

Upon final hearing, the then circuit judge dismissed the petition, and after a reargument the present circuit judge refused to disturb that judgment.

It may be observed that appellants' claim is not at all based upon lack of legislative or municipal authority to lay and operate the tracks in Washington street. The existence of such right is not put in issue by the pleadings, is practically conceded in counsel's brief, and such evidence as appears on the subject affirms it, and was brought out by appellants on cross-examination. Appellants' claim is that neither the Legislature nor the municipality could grant the use of a street to a railroad company so as to divert it from the purpose of its dedication, or destroy the right of ingress and egress and the easement of access of abutting property holders, and that railroad tracks so constructed and operated, and not occupying the street with legislative and municipal authority, are within the rule in Railroad Co. v. Orr, 91 Ky., 109, (15 S. W., 8). The case has here been prepared and argued upon the theory that, conceding the broadest grant possible to the appellee company, it must follow that, no matter what the conditions of the grant, there was annexed and attached to it, as matter of law, a provision that the use by the company of the street should not prevent its use for the passage of persons or vehicles, and therefore that the use in the manner shown in this case was "wrongful," and not within the doctrine laid down in the

Orr Case. In support of this contention, counsel relies on Com. v. City of Frankfort, 92 Ky., 153, (17 S. W., 287); Fulton v. Transfer Co., 85 Ky., 640, (4 S. W., 332); Railroad Co. v. Appelgate, 8 Dana, 289; Crosby v. Railroad Co., 10 Bush, 288; Ruttle v. City of Covington (Ky.) 10 S. W., 644; Kemper v. City of Louisville, 14 Bush, 91.

It is also urged that such an occupation of a city street by railroad tracks as appears in this case constitutes a purpresture, and is both a public and private nuisance, which equity will enjoin at the suit of abutting property holders, in so far as it destroys the abutting owners' ease-ment of access, and that time will not prescribe a nui-sance, nor limitation bar the right of one suffering injury therefrom to enjoin its continuance. It appears from the preponderance of evidence that the tracks opposite appel-lants' property were in substantially the same situation thirty odd years ago, but that the use by the railroads has greatly increased; one track which was then a siding being now a main track, and the business of the companies using them having grown enormously. It is stated by ap-pellee's superintendent—a most intelligent witness—that on an average about 1,000 cars a day are handled between Covington and Cincinnati, and that there are about seven regularly scheduled freight trains in, and seven out, of Covington daily; the number varying with the amount of business. It appears, also, that about the year 1888 the tracks at this point were reconstructed, and were then placed in almost the same position in which they now exist. It seems conceded that the use of these tracks by the ap-pellee company, and the other companies who use the east-ern side of the street, is such as practically to destroy its use for vehicles. That the street has never been graded or improved, or the grade thereof as a street fixed, or side-

walks made, is not material in considering the questions
which we think must control the decision of the case.
Nor is it necessary for us to consider or determine whether
an averment that appellee, with others, occupied and used
the entire street, with evidence showing that appellee used
and occupied only the western half, and had nothing to do
with the eastern half, is sufficient to entitle appellants to
equitable relief as against a purpresture.

The doctrine announced in the cases relied on by ap-
pellants, and much of the doctrine so announced went be-
yond the requirements of the cases under consideration,
seems to us to have been modified, or at least restricted,
in its application, by the doctrine announced in the Orr
Case. That case has been very recently considered in
the case of Klosterman v. Railway Co. (Ky.) 56 S. W., 820,
and the announcement made that the court adhered to that
doctrine, but would extend it no further, and would not
apply the statute of limitations to a case where the oc-
cupation of the street had been without legislative or mu-
nicipal authority. The Orr Case was an action for
damages, one of the ingredients of the damages
being the "prevention of ingress and egress to and
from his [plaintiff's] property." The court there said:
"A railroad must be regarded as a permanent structure,
and, when its construction in the streets of a town or
city is authorized by legislative and municipal authority,
it can not be said to be a nuisance, when operated in
a careful and proper manner. All damages that would
naturally result from the operation of the road can be as-
certained and determined when the road is being con-
structed, or, rather, when it is operated, so as to show the
damages that will necessarily result from its prudent
management. If the right of ingress and egress is af-

fected by it, the right of action arises so soon as the road
is being used by running the cars and engines upon it.
So the constant increase in the number of cars on the track,
as public necessity may demand, caused by the growth
of trade and commerce,—all such matters enter into the
question of damages. All such damages can be ascer-
tained the moment the road is used for transporting freight
and passengers, and after the lapse of five years an action
for such damages is barred. They all may be recovered
in a single action, and therefore the statute of limitations
begins to run from the time the action could have first
been instituted." In that case it was held that there
was no interference with the reasonable use of the street,
and no cause of action existed as to the right of ingress
and egress. But the principle was laid down, and has
been followed in several cases, that the damage resulting
to the lot owner by reason of interference with his ease-
ment of access, from the prudent and skillful operation
of the railroad, is recoverable as soon as operation be-
gins, and is barred by the five-year statute. It is also
held that the "increased number of cars in transportation,
with such increased burdens on the track as would neces-
sarily result in the operation of such a railroad," imposes
no additional liability upon the company, for the reason
that such increase is taken into consideration in estimat-
ing the damages. In this State the doctrine seems to
be that the Legislature and the city have the right to
give to a railroad company the right of way over the
streets. This, of course, does not carry with it the ease-
ment of access of the abutting property holder, which re-
mains in the owner, and does not pass by the grant. That
right is a property right, existing by virtue of owner-
ship of the land abutting upon the street, and can not
be impaired or taken away without compensation.

A distinction seems to be made in the argument between interference with such a right and a destruction of it, such as is claimed to have occurred in this case. We can not see that distinction. An interference with the right is, *pro tanto*, a destruction of it; and it makes no difference in principle whether the citizen's right is partially or wholly destroyed,—he is entitled to compensation. For this reason it has been said, when a railroad, by municipal and legislative authority, occupies a public street, and such occupation results in injury to this right, caused by the prudent and skillful management of the road, that the company must make compensation. To a demand for such compensation, the legislative and municipal authority to occupy the street is no defense. If the interference is such as to cause appreciable injury, damages may be recovered. If the invasion amounts to a total destruction, there is authority that it may be prevented by injunction until compensation be made. In either case, however, the right must be asserted; because, when a railroad is constructed under municipal and legislative authority, "it can not be said to be a nuisance, when operated in a careful and proper manner." The rights of the general public in a street may, under the doctrine announced in the Orr Case, be granted to a corporation performing a public service; and, while this grant does not carry with it the private rights of the abutting property holder, it follows necessarily that, occupying the street by authority of law, it is not, and can not be, a public nuisance, as a result of its skillful and prudent operation. The railroad being, therefore, as to the general public, lawfully in possession, and as "it must be regarded as a permanent structure," the citizen whose pri-

vate rights is injured thereby must assert his claim for redress in due time or lose it.

When, therefore, the tracks under consideration were reconstructed in 1888, and operation commenced over them, the lot owner's right accrued (conceding that it did not accrue years before). If it was a right to an injunction, he should have sought that remedy then.· If it was a right to compensation by way of damages, that right should have been asserted within the statutory period. Said this court in the Orr Case, *supra:* "In ordinary actions for trespass to real estate, the recovery is for the injury accruing up to the inception of the action; but, where a railway is constructed in a street, the injury, if any, to the adjacent property is permanent in its character, and continues as long as the road is operated, and the cause of acting for the damages resulting from its prudent operation arises as soon as the cars begin to run, and in the estimate is included the future operation of the road; for, if otherwise, there would be a cause for action every time the cars passed the dwelling of the owner. Town of Troy v. Cheshire R. Co., 23  N. H., 83; Pratt v. Railway Co., 72 Iowa, 249, (33 N. W., 666); Railroad Co. v. Grabill, 50 Ill., 241." The railroad being lawfully (as to the general public) and permanently established in the street, the right to legal or equitable redress then accrued to the· property holder, and the statute of limitations began to run. In the first opinion of the trial court it was said: "That an action for equitable relief for injury such as is complained of by plaintiffs is barred by the same¹ statute that bars an action for damages is recognized in Railroad Co. v. Esterle, 13 Bush, 667, and is affirmed in Hargis v. Sewell's Adm'r, 87 Ky., 67, (7 S. W., 557.") In the latter opinion, by the present circuit judge, it was

said, referring to the Orr Case: "The results of that doctrine can not be evaded by a change in the method of seeking relief." The doctrine of the Orr Case was emphatically reaffirmed in Rowlstone v. Railway Co. (Ky.) 54 S. W., 2, in an opinion by Judge White, after an elaborate argument by the same eminent counsel who appears in this case, urging that the Orr Case should be overruled as unsound. It has been followed in Stickley v. Railroad Co., 93 Ky., 328, (20 S. W., 261), and Onions v. Bridge Co. (Ky.) 53 S. W., 8. This doctrine applies to actions for such injuries as those complained of in this case, the five-year statute of limitations (Kentucky Statutes, section 2515), which provides: "Any action for trespass on real or personal property, or an action for an injury to personal property, or any injury to the rights of plaintiff, not arising on contract, shall be commenced within the five years next after the cause of action accrued." The statute must be applied, notwithstanding the action is, in form, equitable; for, as said in Hargis v. Sewell's Adm'r, *supra:* "Courts of equity in this State, prior to the adoption of the Revised Statutes, assumed the power, and properly, to apply the statute of limitations to cases of exclusively equitable cognizance, although the old statutes, by their terms, apply alone to actions at law; but now the statute of limitations applies to all actions, whether at law or in equity, and the chancellor can exercise no discretion on the subject, but must apply the statute when properly pleaded, although the jurisdiction over the subject-matter belongs exclusively to a court of equity."

There is another ground upon which the relief sought in this proceeding must be refused. We do not undertake to decide here upon the proposition earnestly urged by counsel for appellee, that, "where a railroad is author-

672 KENTUCKY REPORTS. [Vol. 108

Ferguson &c., v. Covington & C. El. Railroad & Transfer & Bridge Co.

ized by the terms of its charter to construct a road in a particular manner, or through a particular street, such construction, being authorized by law, is not a nuisance, and will not be enjoined." But the acquiescence of appellants' grantors for so long a time in the situation and operation of the tracks as they are now situated and used seems to us to have deprived them of the right to seek equitable relief. "Where a property owner seeks to enjoin a railway company from using its tracks upon a street in front of his premises, has permitted the company to expend large sums of money in the construction of its tracks, and has acquiesced in their use for a considerable number of years without objec. tion or complaint, such acquiescence will deprive him of relief by injunction, regardless of what his original equities may have been." High, Inj., section 618, citing Railroad Co. v. Strauss, 37 Md., 237. And in Reichert v. Railroad Co, (Ark.) 11 S. W., 696: "Where abutting lot owners, who own the fee of a street, stand by, during a period of three years after authority has been granted to a railroad company to construct its track in the same, they will be deemed to have acquiesced in the use of the street for railroad purposes, and will be estopped thereby from maintaining an action of ejectment." In Porter v. Railway Co., 125 Ind., 476, (25 N. E., 556), it was said: "An abutting owner may maintain an action for damages against a railroad which wrongfully builds its tracks in a street. But, when he stands by without objecting until the rights of the public and third parties have intervened, he can not maintain either ejectment or injunction." This court has applied the same doctrine to cases of actual taking of the citizen's land with his knowledge and acquiescence. In Halbert v. Railroad Co., 98 Ky., 663, (33 S. W.,

1121), in an opinion by the present Chief Justice, it was said: "Where an owner who has never received compensation for the use of his land acquiesces in the construction of a railway over it, he is estopped from recovering the land, but may recover damages." The same doctrine has been applied to a married woman in Railway Co. v. Stephens, 96 Ky., 401, (29 S. W., 14). It is unnecessary to multiply authorities upon this proposition.

Whether the injury to appellants' property in this case is of such character as would entitle them to equitable relief upon application made in due time, or whether it is a "matter of mere damage, for which the law affords adequate remedy," within the rule stated in Fulton v. Transfer Co., 85 Ky., 653, (4 S. W., 332), is not decided. For the reasons given, the judgment is affirmed.

Judges Guffy and Hobson concur in the judgment on the last ground stated in the opinion, but as to the other matters discussed decline to commit themselves, not deeming them necessary to the determination of the case.