## CINCINNATI, NEW ORLEANS & TEXAS PACIFIC RY. CO. v. BARKER.

Court of Appeals of Kentucky.

Dec. 14, 1951.

Rehearing Denied May 2, 1952.

Bradley & Bradley, Georgetown, Smith & Blackburn, Somerset, for appellant.

Sam C. Kennedy, John G. Prather, Somerset, for appellee.

CLAY, Commissioner.

This is a suit in trespass for damage to appellee's building allegedly caused by appellant's maintenance and operation of a spur track. The jury awarded appellee $1,-500. On this appeal the significant question is whether or not appellant was entitled to a directed verdict.

In 1891, under a recorded grant, appellant constructed a spur track on land owned by appellee's predecessor in title. The initial objective was to provide direct railroad transportation of freight to and from the grantors' lumber yard, mill and stave works. This spur has been used continuously since the date of the grant.

In 1907 one Cundiff purchased a portion of the land through which this easement runs, and erected a mill. It was located in close proximity to the track, one end being

about 5 feet and the other about 8 feet from the closest rail. In 1947 appellee ·purchased this mill, and about two years later the stone foundation nearest the track caved in and caused the damage complained of.

This is a suit in trespass, not for negligence. It is appellee's theory that appellant, by its use of the track, created such pressure on the foundation as to cause a physical encroachment on the mill property. It appears the original plants served by the spur track are no longer in existence, but over the years similar businesses have been built up close to it. To keep abreast of this industrial growth, in recent years appellant has laid heavier rails, has used heavier equipment and has transported heavier loads.

■ There was sufficient evidence from which a jury could find that the use of the track was a cause of the mill foundation collapse, although it seems the type of construction, the passage of time, and drainage conditions also contributed. A directed verdict for appellant on this ground would not have been proper.

As before stated, negligence is not involved, and there is no showing that appellant altered the location of its track or changed its roadbed except in conformity with accepted engineering standards. Therefore, it is evident that appellant is liable only if it had no right to use its easement in the manner which caused or contributed to appellee's injury.

■■ Much testimony was directed to the type of the mill's foundation construction, which we think immaterial on the question before us. It is also immaterial that appellant claimed a 20 foot right of way as the breadth of its easement. For a great number of years it has acquiesced in the location of the mill at its present site, and therefore cannot successfully contend that appellee has no right to maintain the structure where it is. By the same token, appellee may not complain of the location and proper use of the spur track by appellant, because such location and use existed when the mill was built almost on top of the tracks. Erection of the building at that point carried with it the risk that normal use of the spur might cause injury to the foundation.

With these side issues disposed of, we are brought to the fundamental question in the case. That is: did appellant, at the time of the injury, have a right to use its easement for the transportation of freight over its spur track from industrial plants other than those existing. when·the track was originally constructed?

The original recorded indenture recited that the purpose of the agreement was to make a lumber yard, mill and stave works "more accessible" to the main line tracks of appellant. Thereupon the original property owners granted and conveyed appellant "so much of the right of way over their property as may be necessary for said track * * * to the said lumber yard and mill and said stave works, *and other properties of the parties of the first part * * *.*" (Our italics.)

If we should determine that this easement was granted for a particular and limited purpose; i. e., the servicing of the original lumber yard, mill and stave works, then the easement would perhaps have terminated upon the abandonment or extinguishment of the plants. See 17 Am.Jur., Easements, Section 137. There are several reasons which repel such a conclusion.

■ At the outset, the original grant will not bear such a restricted interpretation. The guiding principle is thus stated in 44 Am.Jur., Railroads, Section 126, page 339: "In order to determine whether the right to complain of the use made by a railroad of its right of way exists in any particular case, the test that will generally apply most satisfactorily is whether the use contemplated is inconsistent with the purposes for which the right of way was acquired; that is, whether it is additional to the purposes for which the land was taken, or, on the other hand, reasonably in aid of those purposes, or, as some of the courts put it, whether or not it constitutes a misuse of the easement which the railroad holds in the land."

■ An examination of the deed shows that the easement was not only granted to serve the plants specified, but also "other properties" of the grantors. A fair interpretation is that the right of way was to be routed from appellant's main line to these particular plants, but that the parties contemplated its use for transportation of freight originating on adjoining or adjacent land. Surely they must have anticipated a normal industrial development as an adjunct to this facility. A splendid statement of such concept appears in Restatement, Property Servitudes, Section 484, as follows: "In ascertaining, in the case of an easement appurtenant created by conveyance, whether additional or different uses of the servient tenement required by changes in the character of the use of the dominant tenement are permitted, the interpreter is warranted in assuming that the parties to the conveyance contemplated a normal development of the use of the dominant tenement."

■ It is evident to us that the use which appellee says caused him damage was not an improper one under the terms of the original grant, and if there was any doubt about it, of course we should construe the instrument most strongly against the grantors and those whose rights were acquired through them.

For cases involving permissible use of an easement for purposes customarily considered consistent with railroad operations, see Voorhies v. Pere Marquette R. Co., 263 Mich. 431, 248 N.W. 860, 94 A.L.R. 522 and 149 A.L.R. 378.

■ Staunchly fortifying the conclusion reached above is the acquiescence by the original grantors and their successors in the development of the spur track operations. The record is not clear concerning the precise date when heavier burdens were carried over this track, but apparently an imperceptible increase in the use of this easement has been taking place for several years. As far as the record shows, all the property owners along this spur (except appellee, after his foundation collapsed) have assented to and actually benefited by its expanding use and service. Assent by the fee owners for a substantial period of time certainly affords a practical interpretation of the scope of the easement; and approaches, as a matter of fact, estoppel. See 17 Am.Jur., Easements, Section 97; Mitchell v. Illinois Central Railroad Company, 384 Ill. 258, 51 N.E.2d 271, 149 A.L.R. 369; Ferguson v. Covington & C. El. Railroad & Transfer & Bridge Co., 108 Ky. 662, 57 S.W. 460; Louisville & N. R. R. Co. v. Pittsburg & K. Coal Co., 111 Ky. 960, 64 S.W. 969, 55 L.R.A. 601; Suppinger v. Caplinger, 289 Ky. 294, 158 S.W.2d 613.

From the foregoing discussion it seems apparent that the current maintenance and operation of the spur track by appellant does not constitute a misuse of the easement granted, and therefore appellee's rights are subordinate thereto. Such being the case, he has no right to recover the damages claimed, and a verdict should have been directed for appellant.

The judgment is reversed for consistent proceedings.