THE C. B. U. P. RLD. CO. V. WM. M. TWINE.

1. RAILROAD COMPANY, *Liable for Damages to Abutting Lot-owner.* While a railroad company may, when licensed by the proper authorities, occupy a street or alley with its track, yet if in laying down such track it so changes the established grade, or in any other manner so lays its track as to permanently obstruct access to an adjoining lot, or if it unnecessarily and unreasonably leaves its cars standing on the track so as to interfere with approach to the lot, the lot-owner may recover damages therefor, and a petition which in general terms charges such wrongs is good as against attack made simply by objecting to the admission of testimony. (*A. & N. Rld. Co. v. Garside,* 10 Kas. 552.)

2. DAMAGES, *Measure of.* Where the wrong done by the railroad company is temporary in its nature, as in leaving cars unnecessarily on its track, or while engaged in the work of laying down its track, something existing to-day and not to-morrow, fluctuating in extent and depending on the ever-repeated action of the company, only such damages as have fully accrued prior to the commencement of the suit are recoverable, and none based upon any presumed continuance or repetition of the wrong.

3. DAMAGES, *Nature and Measure of.* But where the wrong is of a permanent nature, and springs from the manner in which the track as fully completed affects approach to the lot, then, notwithstanding the right which the state retains to control the manner of use of a highway by a railroad company, even if deemed necessary to compel an entire removal of its track, the lot-owner may treat the act of the company as a permanent appropriation of the right of access to his lot, and recover as damages the consequent depreciation in value of the lot; and in such cases the recovery of damages is a consent on the part of the lot-owner to such manner of occupying the street, and concludes both him and any subsequent owner of the property.

### Error from Atchison District Court.

ACTION brought by *Twine* against the *Railroad Company,* to recover damages for obstructing plaintiff's access to a certain lot belonging to him. Trial at the June Term, 1878, of the district court, and judgment for the plaintiff. The defendant brings the case here for review. The facts are sufficiently stated in the opinion.

*D. Martin,* and *Everest & Waggener,* for plaintiff in error:

The petition does not allege such special injuries suffered, to have resulted from the acts of the defendant, as would au-

thorize a recovery within the rule laid down in the case of *A. & N. Rld. Co. v. Garside,* 10 Kas. 552. It was error to receive any evidence under the petition. "Where one suffers in common with all the public, although from his proximity to the obstructed way, or otherwise from his more frequent occasion to use it, he may suffer in a greater degree than others, still he cannot have an action." The averments of the plaintiff's petition simply show that he is injured in common with all the public, although from his proximity to the alley he suffers in a greater degree than others.

The testimony of Twine was incompetent, because he had not shown sufficient knowledge to justify an opinion as to the value of property. Again, his estimate of the value was based upon what he thought the property was worth to *him.* The testimony of Thatcher was incompetent, because his estimation of the depreciation of the property was based wholly upon the assumption that the track was to remain permanently in the alley. We insist, however, that the evidence was incompetent, for the reason that if the plaintiff was entitled to recover at all, depreciation in the value of the property was not the correct measure of damages.

The plaintiff could not recover any damage not sustained when his action was commenced. (23 N. H. 101; 14 id. 303.) In the case of *Cumberland & Oxford Canal Co. v. Hitchings,* 65 Me., it is held that "the loss sustained at the date of the plaintiff's suit, and for which a recovery has not already been had," is the measure of damage, and not the diminution in the value of the estate. (17 Am. Law Reg. 597; 1 Denio, 257; 1 Zab. 469.) In the case of *Bathishill v. Reed,* 37 Eng. L. & E. 317, it was held, in an action similar to the one at bar, that "evidence tendered for the purpose of showing a diminution of the salable value of the premises was inadmissible." (50 Cal. 194; 10 Pa. St. 93.) In the case of *Pinney v. Beny,* 61 Mo. 360, it was held that "plaintiff's measure of damage is the loss actually sustained up to the commencement of the suit." (17 Mass. 289; Hill. on Torts, 573, § 16; id. 602, § 11; 15 Mo. 153; 6 id. 228; 17 Ohio, 489; 7 Metc. 283; 19 Pick. 147; 7 Q. B. 339, 377.)

If the railroad company had no right to place the track in the alley, then it was guilty of maintaining a nuisance; and a judgment for injuries sustained at the commencement of the suit would not be a bar to injuries sustained since the commencement thereof. It would follow, therefore, that the diminution of the value of the abutting property could not be made the measure of recovery.

If the railroad company was rightfully in the alley—as we contend it was—then, upon no principle of law could it be made liable for such damages as were sought to be established by the evidence.

*Hudson & Tufts,* and *Greenlee & Jackson,* for defendant in error:

The evidence was properly received under the petition of plaintiff below, for the allegations thereof bring this case strictly within the third class of damages, as set forth and allowed in the case of the *A. N. Rld. Co. v. Garside,* 10 Kas. 552.

The presumption is, that the court below followed the correct rule as to the measure of damages. (17 Kas. 294; Civil Code, § 307; 19 Kas. 207; 17 id. 478; 16 id. 80; 8 id. 444; 16 id. 557; Hilliard on New Trials, 563, § 3 a.)

Concerning the correct measure of damages, and the right of recovery in this action, see 10 Kas. 552; 43 Iowa, 636; 13 Bush, 667; 31 Mo. 181; 33 N. J. 251; 5 Barb. 80; 16 C. B. (N. S.) 430; 56 Pa. St. 460; 44 Iowa, 11; 82 Ill. 208; 84 Pa. St. 279; 26 Wis. 624; 25 Wend. 462; 41 Cal. 256; 50 N. Y. 205; 14 Ohio St. 546; 43 Wis. 183; Field on Damages, p. 604, § 749.

A railroad company cannot be authorized to permanently block up a street or alley. (10 Kas. 568; 1 Redfield on Railways, pp. 308, 310, 311, and notes; 47 Ill. 304; 41 Cal. 262; 14 Ohio St. 546.)

The opinion of the court was delivered by

BREWER, J.: The defendant in error brought an action in the district court of Atchison county, against the Central

Branch Union Pacific railroad company, alleging in substance that he was the owner of a certain lot in the city of Atchison, occupied by the said Wm. M. Twine as a residence; and that on the south line of said lot there was an alley set apart and dedicated to the use of the public, and for the use and benefit of adjoining lot-owners; that said alley was the only way by which the said Wm. M. Twine could have ingress to and egress from the south end of said lot; that on or about the 1st day of August, 1877, the railroad company "illegally and wrongfully obstructed the alley aforesaid by digging ditches therein, and laying down and building its railroad track therein, and that since about the 1st of August, 1877, it has kept its railway cars and coaches continually and at all times standing upon its said track in said alley, and that it has kept the said ditches and its said track so dug in such condition as to illegally, wrongfully and improperly obstruct said alley during all of said time, and that it has illegally, wrongfully and improperly deprived this plaintiff of all use and benefit of said alley, and of all means of ingress to and egress from the south of said lot in any other manner than by passing through his dwelling house, since about the 1st day of August, 1877; that by reason of such acts of the railroad company, the said Twine had been damaged in the sum of five hundred dollars." To this petition the defendant company filed a general denial. The case was tried at the June term, 1878, without a jury, before Hon. Robert Crozier, judge *pro tem.*, and judgment rendered against the railroad company for the sum of one hundred and twenty dollars. A motion for a new trial was duly filed by the railroad company, and being overruled, the plaintiff in error brings the case to this court, seeking to obtain a reversal of the judgment of the court below.

We see no error in this ruling. The petition alleges the ownership of the lot, that it abutted on this alley, which of course gave a right of ingress thereto and egress therefrom, and which right, personal and of special value to the plaintiff, the railroad company had destroyed by its manner of

occupying the alley.   It charges substantially that the rail-
road company has destroyed the use of this alley as a public
highway and has appropriated the same to its own use, and
that the plaintiff as the owner of. an abutting lot is specially
injured, in that ingress to and egress from his lot over this
established highway are destroyed.   That this wrong gives a
right of action, is plainly affirmed in the case of *A. & N. Rld.
Co. v. Garside,* 10 Kas. 552.   See also *Venard v. Cross* 8
Kas. 248.

While a railroad company may use a highway, it cannot
confiscate it; at least, a mere license to occupy does not give
a right to destroy it.   So long as it is a highway, the public
use cannot be destroyed.   And whenever a railroad company
occupying a highway so lowers, or fills or cuts it up as to
prevent its use as a highway, the public may interfere and
prevent such manner of occupation.   And any individual
sustaining special injury from such occupation may recover
his damages therefor.   A railroad company has no higher
rights in a highway than an individual — it may share in its
use, but cannot monopolize it; and the owner of a lot abut-
ting on the highway, and who has special need thereof for
ingress to and egress from his lot, is specially damaged by
any monopolizing of the use of the highway by a railroad
company.   Here, the appropriation charged is in the manner
of construction, and in leaving its cars constantly standing
upon the track.   Either is a wrong, giving plaintiff a cause
of action. (*Haynes v. Thomas,* 7 Ind. 38; *E., &c., Rld. Co.
v. Combs,* 10 Bush, 382; *J. M. & I. Rld. Co. v. Esterle,* 13
Bush, 667; *Stetson v. C., &c., Rld. Co.* 75 Ill. 74; *Street Rly.
v. Cumminsville,* 14 Ohio St. 523.)

The other and more important question worthy of notice
is the measure of damages.   The court found that, from the
manner in which the railroad track was constructed, and
left to remain, the plaintiff was damaged in the sum of $120.
Upon what method of computation this result was reached,
the findings do not advise.   From them alone it could not be
said whether this was simply the damages suffered by the

owner from the continuance of the nuisance up to the day of filing the petition, or the depreciation in value of the property by reason of the track being regarded as a permanent obstruction of the highway. Neither is there given in the testimony any sums or figures from which, as in the computation of an account, these exact damages could be reached. There being, then, no certainty from the findings whether the damages were for loss of rent, or other temporary injury, or for permanent depreciation in value, and one or the other being unquestionably correct, the contention of counsel for defendant in error is, that the presumption must be that the trial court adopted the proper method of computation, the correct measure of damages. On the other hand, counsel for the plaintiff in error claim that the rulings on the trial show that the court treated the wrong as a permanent injury, and measured the damages by the depreciation in value of the property. In support of this, they cite the admission of testimony over objection as to the value of the premises before and after the laying of the track, the sustaining of an objection to a question as to the damage to the property from the laying of the track to the date of the commencement of the suit. In regard to this latter ruling, it can be sustained upon other grounds. Such a question, *i. e.,* as to the amount of damage done or caused by a particular act, is generally objectionable. That is not a matter calling for the opinion of a witness. (*Roberts v. Comm'rs Brown Co.*, 21 Kas. 247.)

We may remark generally as to the testimony, that it was very full and specific as to the condition of the alley prior to and after the laying of the track, the relations of the alley to the plaintiff's premises, the manner and frequency of its use by him, and all other circumstances from which injury, whether temporary or permanent, could be deduced. And even if the inquiry were limited to the mere temporary damages, we are not entirely clear that evidence of value was incompetent; though see *Bathishill v. Reed*, 37 Eng. L. & E. 317; *Hopkinson v. W. P. Rld. Co.*, 50 Cal. 194; *Pinney v.*

*Beny*, 61 Mo. 360; *D. & B. Canal Co. v. Wright*, 1 Zab. 469; *Hatfield v. Rld. Co.*, 33 N. J. 251.

But conceding that the court treated the obstruction as a permanent one, and measured the damages accordingly as for a permanent depreciation in the value of the property — and we are inclined to think such was the view actually taken — was the ruling erroneous? It will be noticed that the petition counted on obstruction in two ways: first, by the track itself; and second, by permitting cars to remain an unnecessary and unreasonable length of time on the track. The finding ignores this latter cause of inquiry, and awards the damage solely in consequence of the former. Now the latter injury is obviously and in its nature temporary. It constitutes a nuisance to-day which to-morrow may cease. At any rate, it is fluctuating, and depends on the daily action of the company. It is not a nuisance which in any sense can be regarded as permanent. For such injuries, it may well be that only such damages as have been sustained by the conduct of the company prior to the suit are recoverable. There can be no presumption that the company will continue the wrong. So if the injury charged was in the digging up the alley for the purpose of laying the track, such an obstruction as continues only during the process of construction, and which ceases when the track is completed — that is but a temporary wrong. But here the wrong charged is, that the track, as it stands after completion, so occupies the alley as to exclude other use, and prevent ingress and egress; and the testimony abundantly shows that the company considers such manner of occupation necessary for its purposes, and has so laid the track with reference to its own necessities. Having reference to its own uses and purposes, there was no negligence in the construction; the work was well and properly done. The wrong consists in this, that if its use of the alley continues, the plaintiff's use must cease. Now is it not to be presumed that when the company thus laid its track it intended a permanent use of the alley, a permanent dispossession of plaintiff from its use? — and may not the plaintiff,

accepting that as a fact, recover in a single action the permanent injuries which his property sustains thereby? Must he assume that because the company can, it will remove its track, and so for each day's continuance of the obstruction bring his separate action? Must he assume that because the state can, it will compel such a modification, or if necessary, abandonment of the use by the railroad company as will permit a use by the public generally, and thus treat that as temporary which the company evidently intends as permanent, and which he as an individual cannot prevent from being permanent? It may well be that the state regards the use by the company as of more value to the public than the general use by the public itself, and so will never interfere with such use by the company. And if the state assents, who can disturb the use? For while there are cases in which an individual can abate a public nuisance, when that nuisance does him a special and personal injury, can that be called a public nuisance which the state authorizes, or even that which it simply assents to? Suppose the state in express terms empowered a railroad company to construct its track along a highway, at such a grade as to destroy its use by the public generally as a highway: is not such authority within the power of the state? And would it be contended that under pretense of abating a public nuisance of special injury to himself, an adjacent lot-owner could remove the track or restore the grade? It is said by Cooley, in his work on Torts, p. 615:

"The state having in some form provided for and created a certain easement, may at its will abandon it, or change it to some other easement, or restrict or enlarge the use of it, and generally do with the creature of its authority what it pleases. A common highway may thus be qualified by the laying of a railway track upon it; a navigable stream may be bridged or dammed; awnings may be permitted above a city street, and covered areas below it; navigation companies may be given special privileges in the public streams of the state, and so on. In these cases the state only restricts or narrows its own right; and the right of the individual, which is only a part of the public right, can be no broader than that which the state has retained."

If this be true, when the state expressly grants such author-
ity, is it not also true when the state merely licenses the occu-
pation by the railroad company, and the latter in a reasonable
and proper construction of its track so changes the grade as
to practically exclude all other use of the highway, and such
change of grade and manner of occupation is unchallenged by
the state? Is not, so far as the individual is concerned, this
implied assent equivalent to express authority? and can he,
either by his own act or through any process of the courts,
abate this obstruction of the highway? But be this as it may,
may not the lot-owner, when such appropriation of a highway
is in fact made by a railroad company, at least assume that
the state has granted authority, and that the company has
done that which it had license to do, and treat the appropria-
tion as permanent? And in such case, may he not recover for
the obstruction to ingress and egress as a permanent injury to
and depreciation of the value of his lot?

While the amount in controversy here is small, the prin-
ciple is important. A net-work of railroads already covers
the state, and the iron track is being pushed in every direc-
tion. It will soon touch every city and town and village,
and in the nature of things must occupy many highways and
streets. Frequently, conformity to the established grade of
the highway may be impossible. Sometimes there may be
express grant of authority to alter the grade to the extent of
partially or totally obstructing other travel; more often, as in
the present general law, simply license to occupy, with the duty
of restoring the road to such a state as not to impair its use-
fulness as a highway. (Comp. Laws 1879, p. 224, § 47.) Of
course, the controlling and supervising power of the state
always remains. But where, occupying under the general
law, a railroad company so changes the grade as to obstruct
ingress and egress, must the lot-owner treat it as simply a
continuing nuisance, for each day's continuance of which he
has a separate action, and so multiply suits with no benefit
to himself and great injury to the company, or may he not
treat it as a permanent injury, recover for its effect upon the

38—23 KAS.

value of the lot as such an injury, and thereby yield his personal assent to the continuance of such obstruction, and estop him or any subsequent owner of the lot from challenging the company's manner of constructing its track? When the right of way is condemned, though only an easement is taken, the full value of the land is awarded because the appropriation is understood to be permanent. The company may abandon its right of way to-morrow, yet action is taken as though it never would abandon. So when its track is laid in a highway, unless placed in such a manner as indicates only a temporary use, may it not be treated as a permanent appropriation, and action taken accordingly? Does not the spirit of the present law aim to adjust rights with fewest suits and least litigation?—and will it not tend to the interests of the railroad company and the lot-owner alike, to have all questions adjusted in a single action, instead of by repeated suits for continuing wrongs? Again, is not the obstruction of ingress and egress an appropriation of private property for which compensation is to be made, and does it lie in the mouth of the company to say that it had no right to appropriate it and may be compelled by the state to restore it?

In *Haynes v. Thomas*, 7 Ind. 38, it is said: "The right to use a street in a town adjoining a lot abutting on it is as much property as the lot itself, and the legislature has as little power to take away one as the other. Whether the act of dedication transfers the fee from the donor to the public, is not a material inquiry." In *Elizabeth, &c., Rld. Co. v. Combs*, 10 Bush, 382, the court says: "It is well settled, both here and elsewhere, that the owners of lots have a peculiar interest in the adjacent street, which neither the local nor general public can pretend to claim—a private right in the nature of an incorporeal hereditament, legally attached to their contiguous ground—an incidental title to certain facilities and franchises assured to them by contract and by law, and which are as inviolable as the property in the lots themselves." And in Cooley on Torts, p. 616, following the quo-

tation made, *supra*, the author says: "But while the state may restrict its own right, it cannot restrict or take away the rights which are purely individual, even though they are intimately associated with the public right. An example has been given in another place of a railroad laid down in a public highway by state consent, and it was stated that this consent would not empower the railroad company to cut off an adjacent land-owner from convenient access to the street. This right of access is an individual, not a public, right, and the land-owner, in claiming damages for being deprived of it, is complaining not of a public, but of a private nuisance." And in the case of *J. M. & I. Rld. Co. v. Esterle*, 13 Bush, 667, it was decided, that where access to a lot was obstructed by the laying down of a railroad track, a single action might be maintained for the depreciation in value, and the bringing of such an action was an assent to the continuance of the obstruction; in other words, it was treated as a permanent appropriation of private property for which full compensation was to be made. See also *L., &c., Rld. v. Applegate*, 8 Dana, 294; *LeClercq v. Gallipolis*, 7 Ohio, 217; *Cincinnati v. White*, 6 Pet. 431; *Mix v. L. B. & M. Rly. Co.*, 67 Ill. 319; *Stone v. F. P. & N. W. Rld. Co.*, 68 Ill. 394.

Without pursuing this argument further, we conclude that where the injury springs from the manner in which the track as completed affects access to the lot, the lot-owner may treat it as a permanent injury to the lot, a *quasi* condemnation of a certain interest in his property, and recover the consequent depreciation in value, and that such recovery is an assent on his part to such manner of using the highway by the company, and concludes both him and all subsequent owners of the lot.

There being no other question of importance, the judgment will be affirmed.

All the Justices concurring.