THE CENTRAL BRANCH UNION PACIFIC RAILROAD COMPANY v. L. A. ANDREWS et al., as Administrators of the estate of R. S. Andrews, deceased.

1. SUPPLEMENTAL ANSWER—Discretion of Court—Practice. The matter of granting an application to file a supplemental answer is largely within the discretion of the court; and where the application is made after several trials of the action have occurred, and the facts constituting the new defense are not fully and definitely stated, and no satisfactory reason is given for the delay in presenting the application, its refusal is not error.

2. ATTORNEY — Competent Witness — Credibility. An attorney may testify in behalf of his client, and the fact that his compensation as an attorney in the action is contingent on the result of the litigation does not render him incompetent as a witness. The interest he may have in the action goes to his credibility, but not to his competency.

3. ——— Error Cured. The erroneous exclusion of testimony is cured by its subsequent admission.

4. DAMAGES, Measure of; Cases, Approved. The rules of law and measure of damages applicable in an action by an abutting lot-owner in a city against another who permanently obstructs access to the lot by blocking up and appropriating the street or alley upon which the lot is situated, as stated in the Garside Case, 10 Kas. 552; Heller Case, 28 id. 630; Andrews Case, 30 id. 590; Larson Case, 40 id. 301; same case, 19 Pac. Rep. 661, applied, and approved.

5. ALLEY, Obstructed by Railroad Track— City Controls. The owner of property abutting on an alley so obstructed is not required or authorized upon his own motion to enter upon the alley over which a railroad track is improperly constructed for the purpose of changing the track or repairing the alley, and thus lessen the injury and reduce the damages to which he was entitled by reason of such obstruction. The control of the alley is in the city.

6. INSTRUCTION, *Refusal, When Not Error.* The refusal of the court to charge the jury in a civil action that each juror must ultimately act upon his individual judgment, where it does not appear that there was any special necessity for such an instruction, or that any prejudice resulted therefrom, is not reversible error.

7. ———— *Instruction, Refused.* Nor is it error to refuse an instruction that a railroad corporation is entitled to the same protection under the law as individual litigants, where it does not appear that there was any reason to distrust the integrity of the jury or impute partiality or prejudice to them.

8. CITY — *Plat of Addition — Ownership — Evidence.* In an action like the present one, a plat formally made and filed in the office of the register of deeds, platting a tract of land as an addition to the city and dedicating to the public streets and alleys, wherein the party making the plat and dedication recites that it is "my addition," is *prima facie* proof that he was the owner of the land so platted and dedicated.

9. INSTRUCTIONS — *Construed Together.* The instructions given to the jury must be taken and construed as a complete whole, and while some detached portions of the charge herein, standing alone, might seem inaccurate, yet they are so qualified by others that are given as not to be misleading or prejudicial.

10. SPECIAL FINDINGS. *Consistent With Verdict.* The special findings of the jury examined, and held not to be so contradictory or inconsistent with the general verdict as to require a reversal.

### *Error from Atchison District Court.*

THIS action was instituted on September 13, 1878, by *R. S. Andrews,* to recover from the *Central Branch Union Pacific Railroad Company* damages to certain lots in the city of Atchison, owned by Andrews. After several trials of the cause, Andrews died, and the action was revived in the name of L. A. Andrews and B. F. Hudson, as administrators of the estate of R. S. Andrews, deceased. There have been several trials of the cause since that time, and it has been repeatedly before this court. In the reported decisions may be found a full statement of the nature of the action, and of the pleadings therein. (26 Kas. 702; 30 id. 590; 34 id. 565; 37 id. 162; 37 id. 641.) At the last trial, which was had with a jury, in February, 1888, the plaintiffs obtained a verdict for $3,479.50.

Certain special questions of fact were submitted to the jury, and were answered as follows:

"SUBMITTED BY PLAINTIFFS.

"1. Was R. S. Andrews on or about the first day of August, 1877, and at the time of the injuries complained of herein occurred, the owner of lots numbered 16, 17, 18, 19, 20, and 21, in block numbered 23, in L. C. Challiss's addition to the city of Atchison, in Atchison county, Kansas, and has he and his heirs or estate since his death, continued to own said property since that time? A. Yes.

"2. Has R. S. Andrews died since the beginning of this action? A. Yes.

"3. Are L. A. Andrews and B. F. Hudson the duly appointed, qualified and acting administrators of the estate of said R. S. Andrews, deceased, and has this action been revived, and have they taken his place as plaintiffs in this action? A. Yes.

"4. Was there an alley regularly laid out and dedicated to the use of the public immediately south of and running along the south ends of above-described lots 16, 17, 18, 19, 20, and 21, in block 23, in said L. C. Challiss's addition to said city of Atchison, Atchison county, Kansas, before and up to and on or about August 1, 1877? A. Yes.

"5. Was said alley south and adjoining said property and lots open for public use and the use of adjoining lot-owners, previous and up to the time that defendant laid down and constructed its railroad track thereon? A. Yes.

"6. Did the defendant on or about the 1st of August, 1877, construct a railroad track in said alley immediately south of and running along the south ends of plaintiff's lots and real estate, above described, and fully described in the petition herein, in such manner as to permanently obstruct said alley? A. Yes.

"7. What was the fair market value of the said property and real estate of said R. S. Andrews, now deceased, on or about August 1, 1877, just before said track was laid down in said alley, and before said alley was obstructed? A. $8,000.

"8. What was the fair market value of the said property and real estate then so owned by R. S. Andrews on or about August 1, 1877, with the said alley permanently obstructed, and just after the obstruction was placed therein by defendant? A. $6,000.

"9. Was the said property and real estate then so owned by

R. S. Andrews depreciated in value by reason of the permanent obstruction of said alley immediately south of and running along the south end thereof by defendant, and if so, in what amount? A. $2,000.

"10. What is the interest on the sum above named from the date of such obstruction of said alley, to wit, about August 1, 1877, till now, at the rate of seven per cent. per annum? A. $1,479.50.

"11. If said property was worth less after said track was laid down in said alley than it was before, was such depreciation the result of the improper construction of said track in said alley? A. Yes."

"SUBMITTED BY DEFENDANT.

"1. Was said track laid down and constructed in said alley on August 1, 1877? A. Yes.

"2. At said time did the defendant and other companies own the south half of said block 23? A. Yes.

"3. Just previous to August 1, 1877, was the south half of said block used and occupied by the railroad companies for railroad purposes? A. Yes.

"4. In such use, had several tracks running east and west been laid down and constructed over said south half of said block, parallel with and contiguous to said alley? A. Yes.

"5. At said time and for a long time prior thereto, did one of the defendant's railroad tracks run east and west over said south half of said block 23, and immediately south of and next to said alley, the full length thereof in said block? A. Yes.

"6. For several years just previous to August 1, 1877, did said defendant use said track so constructed next to said alley by running cars and trains along and over the same many times each day and night? A. Yes.

"7. On August 1, 1877, prior to the time said track was constructed in said alley, what was the distance between the south end of lots described in plaintiff's petition and the said track of defendant, so constructed next to the south line of said alley? A. Near of south line of alley.

"8. Was said alley then 15 feet wide? A. Yes.

"9. Did defendant company own the property and that said portion of said block 23 south of and next to said alley? A. Yes.

"10. Was said block 23 with other lots and blocks laid off and platted in 1858 or 1859 by L. C. Challiss? A. Yes.

"11. At said time was L. C. Challiss the owner of said ground and land so laid off into lots and blocks? A. Yes.

"12. Was said alley described in plaintiff's petition dedicated to the public by the owner of the land? A. Yes.

"13. If question 12 is answered 'yes,' then state from the evidence who was the owner of the land at the time said alley was dedicated to the public. A. L. C. Challiss.

"14. If the jury find a general verdict for the plaintiff, what amount of such verdict is awarded as compensation for the use of the ground over which said track is located? A. None.

"15. If the jury find a general verdict for the plaintiff, what amount of such verdict is awarded as damages to said property by reason of the running of cars, locomotives and trains to and fro on said track? A. None.

"16. Was the market value of said property depreciated by reason of the running and operation of cars, engines and trains along and over said tracks? A. No.

"17. If question 16 is answered 'yes,' then state amount of such depreciation. A. ——.

"18. If question 17 is answered by fixing an amount, then state if such amount is included in the general verdict. A. —.

"19. Has not the market value of said property gradually increased since about the time said track was constructed to the present time? A. Yes, as other city property.

"20. If the jury find a general verdict for the plaintiffs, what amount of such verdict is allowed as damages by reason of the inability of said R. S. Andrews to drive through said alley from Ninth to Tenth streets? A. $2,000.

"21. Was the use of said alley over which said track was constructed of any value to said property? A. Yes, as a private roadway.

"22. If question 21 is answered 'yes,' state what amount of general verdict is allowed to the plaintiffs as compensation for the use of said alley by the defendant company. A. None.

"23. If the owner of said property sustained any damage by reason solely of the construction of said track in said alley, did such damage accrue by reason of his inability to use said alley as any person desiring to might use the same? A. No.

"24. For what purpose had the owner of said alley used the said alley prior to August 1, 1877? A. For private roadway.

"25. Was not the sole use he made of it to drive to and fro over the same? A. No.

" 26. If question 25 is answered 'no,' then state for what other purpose he used it. A. To drive on his property.

"27. Since about the 1st day of August, 1877, has not the market value of said lots continued to increase in value? A. Yes, as other city property.

"28. Taking into consideration the capabilities and uses for which said property was adapted, was its market value materially affected by the construction of said track? A. ———.

"29. On August 1, 1877, was said property less valuable for residence purposes than for other purposes for which it was adapted and might have been used? A. No.

"30. Shortly before August 1, 1877, was the market value of said property greater without the improvements thereon than with such improvements? A. No.

"31. On or before August 1, 1877, would the market value of said six lots have been enhanced by the removal of said buildings thereon? A. No.

"32. If the jury find a general verdict for the plaintiffs, is such general verdict based solely upon the theory that such property was damaged as residence property? A. No.

"33. If question 32 is answered 'no,' then state what amount of general verdict is allowed as damages to said property because of depreciation for other purposes than residence? A. $2,000.

"34. What are the several elements or sources of damages which make up the aggregate of the general verdict, and how much of said aggregate is made up by each of said elements or sources of damages? A. By use of the private roadway."

A motion for a new trial was made by the railroad company, and was overruled; after which, judgment was rendered against the company in accordance with the verdict. Exceptions were taken to the rulings, and the case has been removed to this court for review upon a petition in error and case-made.

*Waggener, Martin & Orr*, for plaintiff in error.

*Hudson & Tufts*, for defendants in error.

The opinion of the court was delivered by

JOHNSTON, J.: This is the fifth review of judgments rendered against the railroad company in this action, and the

pleadings and facts are so fully set forth in the earlier considerations of the case that a repetition of all these is now unnecessary.   The measure of damages to be applied in the case, and its merits, have been quite fully discussed and decided in former opinions, and we are now asked to review rulings made at the last trial of the pleadings, the admission of testimony, and the instructions requested and given to the jury.

After the case was last remanded to the district court, the railroad company applied for leave to file a supplemental answer, alleging that since the institution of the action the company had caused the alley to be restored to its former state, and to such a state as not to necessarily impair its usefulness as an alley.   This application was refused, and the ruling is assigned as a ground of error.   The supplemental answer offered to be filed was general in its terms, and contained no statement as to when the alley had been restored and repaired, if it had been done at all.   The affidavit accompanying the answer was silent in this respect, and, besides, there was no showing made why this new matter was not presented to the court at an earlier stage of the litigation.   The action has been pending for more than ten years, has been repeatedly tried on the issues made between the parties, and before additional defenses are interposed or new issues made, a full and definite statement of the facts constituting the proposed defense should have been made and satisfactory reasons given for the delay in presenting the same.   The matter of changing the issues by the filing of amended or supplemental pleadings is within the control, and subject to the sound discretion of the trial court, and unless it appears that the court has abused its discretion in this respect no error will lie from its refusal.   (*Clark v. Spencer*, 14 Kas. 398.)   In view of the indefiniteness of the proposed answer, and the meager and unsatisfactory showing upon which the application was based, we cannot hold that the court abused the discretion with which it was vested. More than that, the record shows that the alley has remained in about the same condition that it was in when the

1. Supplemental answer — discretion of court.

obstruction was placed there, and as to its condition at that time the answer filed alleged that the alley was then left in such a condition as not to necessarily impair its usefulness, and that the company had restored it to its former state of usefulness. This allegation was denied by the defendant in error, and an issue raised thereon.

Objection is made to the testimony of witnesses North and Coats. They were examined as to the injury occasioned to the Andrews lots by obstructing the alley back of them, and which were occupied at the time of the obstruction by residence buildings. Upon cross-examination the company inquired of them if the property was not more valuable for mills, elevators, and the like, than for residences, and obtained their opinions thereon. Upon a reëxamination they stated, over the objection of the company, that to utilize the lots for such purpose it would be necessary to take the residence buildings away, and substitute suitable ones. The claim is that it is opinion evidence, and therefore incompetent. But the testimony was not very material, and the objection is unimportant. If the testimony is objectionable at all, it is no more so than that called out on the cross-examination by the company itself, and the answers given only stated, what all knew, that the residence and out-buildings connected with it were unsuitable for mills and elevators. The use for which the property was adapted was a proper consideration in determining its value; but Andrews was not required to change its use or to destroy the buildings already there to accommodate the company. The company had attempted to draw from the witnesses the opinion that the property was better adapted for mills, elevators and wholesale houses than for residences, and the defendant was only pursuing the same inquiry, and the testimony objected to is certainly not prejudicial.

Objection is made to the testimony of J. F. Tufts, of counsel in the case, and to the action of the court in ruling out a question on cross-examination of him as to what per cent. of the recovery he would be entitled to for his services

**2. Attorney— competent witness— credibility.** in the action. The fact that he was an attorney in the case, or that his compensation as such was contingent on success, does not render him incompetent as a witness. The parties to an action are now allowed to testify in their own behalf, and so may an attorney in behalf of his client. The interest he may have in the result goes to his credibility, but does not affect his competency. The railroad company was permitted to cross-examine Mr. Tufts as to his interest, and in answer to inquiries he stated that his fee in the case was a contingent one, and depended to some extent on the amount of recovery. An objection was sustained, it is true, to the question as to what per cent. of the recovery he was to have, a question which might have been allowed; but later in the examination counsel for the company returned to the same subject, and **3. Error cured.** was permitted to inquire of this witness with respect to his interest, without objection or restraint. The interest which the witness had in the result of the proceeding was quite fully brought out and an opportunity for further inquiry was given, and hence this point must be overruled.

The refusal of some requests for instructions is a ground of complaint, but in most of these cases the general charge embraces and states the rules contained in the rejected requests, and upon the whole we think the case was fairly submitted to the jury.

It will be unnecessary to refer specifically to all the objections raised upon the instructions. One of the requests made was that "the jury are instructed that if plaintiffs are entitled to recover herein at all, such recovery must be based upon the negligent, wrongful and improper construction of said alley, and the measure of damages will be the difference between the injury suffered by a proper and improper construction of said track." This is not an accurate statement of the rule or measure of recovery, nor, indeed, is it as favorable for the company as the instruction given. It refers to the improper construction of the alley, instead of the road in the alley; and further,

it would make the company liable to the defendant in error for all the injury resulting from an improper construction, whether it was special as to him or such as he would suffer in common with the public. The injury for which he can re-

4. Damages, measure of; cases, approved.

cover "must be special as to him, and not such as affects the public in general." (*Garside Case,* 10 Kas. 552; *Heller v. Rld. Co.,* 28 id. 630; *Andrews Case,* 30 id. 590; *Rld. Co. v. Larson,* 40 id. 301; same case, 19 Pac. Rep. 661.) The jury were instructed as a matter of law, that under the evidence the railroad company had a right to construct its track in said alley and use the same in the prosecution of its business, and that if it had restored the alley to its former state, or to such a state as not to have necessarily impaired its usefulness, the plaintiff below could not recover; and that if they found the obstruction to be a permanent one, which prevented ingress to and egress from the lots, thus diminishing their value, the damage would be the difference between the market value of the property immediately before the track was laid in the alley, and the market value immediately after the track was laid down. They were further told that the plaintiff below had the general right in common with others to travel upon and use the alley as such, and for any obstruction to this general right he could not recover, but that his right of recovery was limited to the special injury the same as if the alley was a private roadway; that he could not recover for the land in the alley, nor for injuries arising from its obstruction as a public thoroughfare.

No error was committed in refusing the requests numbered 14 and 15, to the effect that the city ordinance authorizing the company to construct its road in the alley did not give it the exclusive right to occupy the alley, nor preclude Andrews from using the same. The issues of the case were joined and tried upon this exact theory, and the whole charge given proceeded upon the view that the company might use the alley in a proper way, but had no more right to permanently obstruct it than an individual had; that Andrews was entitled to use

the alley in going to and from his lots, and in fact his right of recovery was based upon the claim that the company prevented this use by permanently obstructing the alley and monopolizing its use.

A criticism was made upon the eighth instruction given by the court, which states : "If from the evidence you find that the defendant's said railroad track was, from the manner in which it was laid down, built and constructed in said alley, a permanent obstruction in said alley, materially and injuriously affecting the approach to plaintiff's said lots, then the plaintiff had the right to treat the act of the defendant in building, laying down and constructing its track in said alley as a permanent appropriation of the right of access by the plaintiff's intestate to his said lots, which would enable him to recover as damages the consequent depreciation in the value, if any." The objection is to the words "materially and injuriously affecting the approach to the plaintiff's said lots." It will be observed that the instruction relates to the character of the obstruction, as to whether it should be treated as a temporary or permanent appropriation of the right of access rather than to the extent of the appropriation. It requires that the material injury to the approach must amount to a permanent obstruction, and where the track is constructed in such a way as to amount to a permanent obstruction, it should be treated as a permanent appropriation. The objectionable words might be treated as surplusage, but the inclusion of them is not a substantial variance from the rule stated in the *Twine Case*, 23 Kas. 585, and the later cases following it. Aside from that, it is clear from the testimony in the record that under the rule given in the *Twine Case* the obstruction was of a permanent character, and the jury have so treated it. Besides, the plaintiff below based his right of recovery upon the ground that he was absolutely excluded from the use of the alley in going to and from his lots, and upon nothing else.

The complaint that the court refused an instruction to the effect that Andrews might have planked or repaired the alley

himself, and that he could only recover what was required to put it in a passable shape, is not well founded. No such duty devolved on him, as the control of the alley is in the city, and the court properly advised the jury that "the plaintiffs in this case have no right to enter upon the track of defendant to make any alterations therein of any kind or nature whatsoever, and would be trespassers in so doing."

5. Alley, obstructed by railroad track —city controls.

The refusal of request 16, that the company was not obliged to put the alley in a better condition than it was before the track was constructed, is made a ground of error; but upon examination of the charge given it is found that instruction 10 is almost in the identical language of the request refused; and the same may be said with respect to request No. 3, which is fully covered by the instructions 7 and 11 that were given by the court.

An instruction was asked directing the jury that while each member was expected to consult and confer with the others, yet ultimately he must act upon his individual judgment. While this instruction might have been given with propriety, its refusal in this case cannot be regarded as reversible error. The failure to so charge the jury in a criminal case, when requested, has been held a ground of error in *The State v. Witt*, 34 Kas. 496; but the same strictness is not required in civil as in criminal cases, and no showing was made that there was any special necessity for the giving of such instruction in this case, or that any prejudice resulted from the refusal. Neither was there any error in refusing to instruct the jury that a railway corporation was entitled to the same protection under the law as individuals, and that it was the. duty of the jury to determine the issues without sympathy or prejudice as between the parties. It does not appear that there was any reason to distrust the integrity of the jury or impute partiality or prejudice to them. They were advised that the issues must be determined upon the evidence and the law presented to

6. Instruction, refusal, when not error.

7. Instruction, refused.

them, and that the burden of proof rested upon the plaintiff below.

Instructions were asked and refused in reference to the proof which is necessary to establish a dedication of an alley. These were unimportant in this case, as the answer of the company distinctly recognized the existence of the alley as a public thoroughfare, and alleged that it derived authority from the city having control of the alley to lay its track thereon. It further appears that the alley is in Challiss's addition to the city of Atchison, and the jury found that a dedication was made by L. C. Challiss, the owner of the land, prior to the building of the railroad. This finding was based on the admission of the parties, and upon a plat made by Challiss in November, 1858, which is on file in the office of the register of deeds, formally dedicating the land, which was duly signed and acknowledged by him, and in which he speaks of the plat of land as "my addition." The point is made that the proof failed to show that Challiss was the owner of the land dedicated by him. There is no evidence of this fact beyond what has been mentioned, but presumably he was the owner of the land platted by him, and as between these parties and as the question is presented in this case, the plat must be held to be *prima facie* proof of his ownership.

8. City — plat of addition — ownership — evidence.

Some sentences selected from the general charge in relation to the consideration and weight to which the testimony of witnesses is entitled, are criticised. One is, that "You are not bound to believe what a witness has said merely because he has sworn to it." And another, that "You have a right to believe the witness you deem most worthy of credit, and disbelieve those you deem least worthy of credit." Taken alone, and detached from other instructions, they would be objectionable, but when read in the connection in which they were used and construed with reference to the whole charge, the objection disappears. Of course a witness is not wholly to be disbelieved, nor his testimony wholly rejected, unless he

has knowingly and willfully testified to a falsehood. (*Hale v. Rawallie,* 8 Kas. 136.) But the court recognized and stated this to be the rule. The language objected to was used in reference to contradictions in the testimony, and in that regard they were directed to reconcile the conflicting statements if it was possible, and where that could not be done they were to determine under the rules given whose statements should be received. The instructions should be read and construed with

*9. Instructions—construed together.*
reference to one another and as a whole, and where detached sentences which standing alone might seem inaccurate are so qualified by other portions of the charge as to fully state the law of the case, and not calculated to mislead, they afford no ground for reversal.

It is finally urged that a new trial should have been granted because some of the findings are inconsistent and untrue. It is said that there was no evidence to sustain the finding of dedication, or that Challiss was the owner of the land upon which the alley was located. But this objection has already been answered. Finding No. 30 is that—

"If the jury find a general verdict for the plaintiffs, what amount of said verdict is allowed as damages by reason of the inability of said R. S. Andrews to drive through said alley from Ninth to Tenth streets?"

The contention is that this had reference to the inability of Andrews to use the alley in the same manner as the public in general would have the right to use it. But this is hardly a fair interpretation. The jury were specially instructed that no damages could be given upon that ground, and they undoubtedly had reference to the use of the alley from Ninth to Tenth streets as a means of ingress to and egress from the property abutting on the alley. This finding is explained to some extent by those which follow:

"Was the use of said alley over which said track was constructed of any value to said property? *Ans.:* Yes, as a private roadway.

"If the owner of said property sustained any damage by

reason solely of the construction of said track in said alley, did such damage accrue by reason of his inability to use said alley as any person desiring to might use the same? *Ans.:* No."

The jury found that the damages suffered were $2,000, and the interest thereon from August 1, 1877, $1,479.50, amounting to $3,479.50. This result was reached by the difference between the market value of the property before the alley was obstructed, which was $8,000, and the market value of the same immediately afterward, which was placed at $6,000. The difference, $2,000, which is the sum mentioned in finding No. 20, was intended to include the entire injury suffered by Andrews.

Findings 32 and 33 are criticised for the same reason. They read as follows:

" If the jury find a general verdict for the plaintiffs, is such general verdict based solely upon the theory that such property was damaged as residence property? *Ans.:* No.

" Then state what amount of said general verdict is allowed as damages to said property because of its depreciation for other purposes than residence property. *Ans.:* $2,000."

The amount mentioned in this latter answer constitutes the entire allowance made, and is as much as to say that the verdict is not based solely upon the injury to the property as residence property, but for all other purposes as well. This is shown in the succeeding question and answer:

" What are the several elements or sources of damage which make up the aggregate of the general verdict, and how much of said aggregate is made up by each of said elements or sources of damage? *Ans.:* By use of the private roadway."

It is obvious from this finding that the verdict was based solely on the special injuries suffered in permanently obstructing the ingress and egress to and from the Andrews premises; not the common injury which the owner would suffer in common with the public in general, but the damages arising from being prevented from using the alley as a private roadway to gain access to his property. Embraced in this is every element or source of damage for which an allowance was made.

The findings are subject to some criticism for want of clearness, but when they are considered together there is no difficulty in understanding the meaning of the jury, and, so considered, they cannot be regarded as contradictory or inconsistent with the general verdict. The amount awarded by the jury seems to be quite liberal, but five different juries have substantially found the same amount; and as the case was fairly submitted, the verdict must stand and the judgment thereon must be affirmed.

10. Special findings, consistent with verdict.

All the Justices concurring.