THE INTER-STATE CONSOLIDATED RAPID TRANSIT RAILWAY COMPANY v. L. J. EARLY.

1. CITY — *Grade of Streets — Damages.* A city has the right to establish the grade of its streets, and it is only when the grade is changed, after being once established, that damages can be allowed therefor to property-owners. (Gen. Stat. of 1889, ¶ 562.)

2. STREET RAILWAY COMPANY, *When not Liable for Damages for Grading Street.* Where a street railway company is permitted by a city to construct its road in a street of the city and upon the established grade thereof, such road, with permission of the city, may cut down or grade the street so as to bring it to the established grade. In doing so the railway company acts for the city, and in bringing the street, or any part thereof, to an established grade, it is not liable to adjoining lot-owners on account of cutting down or grading the street, if the grading is done in a good and workmanlike manner, and confined wholly within the street.

*Error from Wyandotte District Court.*

ON the 25th day of January, 1887, *L. J. Early* commenced his action against the *Inter-State Consolidated Rapid Transit Railway Company* to recover $3,000, because of the construction of a double-track railway on Sixth street, in Kansas City, Kansas, whereby it was alleged that the ingress to and egress from plaintiff's premises on Sixth street were destroyed. Trial

had before the court with a jury. The jury returned a verdict for the plaintiff, and assessed his damages at $500. They also made and filed the following special findings of fact:

"1. If you find for the plaintiff in any sum on account of construction and operation of a railroad by the defendant on Sixth street in front of plaintiff's premises, how much of such sum do you find to arise exclusively from the grading done by the defendant on said street? A. $500.

"2. State whether the ingress to and egress from the plaintiff's premises on the Sixth street side thereof has been wholly destroyed by the construction and operation of defendant's railroad. A. It has.

"3. State whether the ingress to or egress from plaintiff's premises have been simply made temporarily less convenient, or permanently destroyed by the construction and operation of defendant's railroad? A. Permanently destroyed.

"4. State what you find was the value of plaintiff's property immediately before the defendant began the construction and operation of its road. A. $3,600.

"5. State what you find to be the value of plaintiff's property immediately after defendant began the construction and operation of its road. A. $3,100.

"6. State whether or not the rental value to plaintiff's property has been increased by the construction and operation of the defendant's road. A. Unable to answer, as there are no buildings."

The railroad company filed a motion for a new trial, which was overruled. Judgment was entered upon the verdict. The *Railroad Company* excepted, and brings the case here.

*Warner, Dean & Hagerman,* and *N. H. Loomis,* for plaintiff in error.

*Hale, Fife & Craig,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action brought in the court below by L. J. Early against the Inter-State Rapid Transit Railway Company, to recover damages to certain lots owned by him in Kansas City, in this state, on account of the construction of its railway on Sixth street in front of his prop-

erty.  Soon after, because of the consolidation of this and other companies, under the name of the Inter-State Consolidated Rapid Transit Railway Company, an amended petition was filed.  Trial had before the court with a jury.  Judgment was rendered for the plaintiff below for $500 and costs. The railway company excepted, and brings the case here.

Sixth street in the old city of Wyandotte, (now Kansas City, Kas.,) between Minnesota avenue and the south end of Sixth street, is a public street, varying in width at various places.  It was the chief street in the old city connecting the north and south ends.  In some places, between Minnesota avenue and Orville street, Sixth street was as wide as 90 feet; but in front of the property of Mr. Early it is somewhat difficult to determine the exact width of the street. Upon his part, it is claimed to be 45 feet only; while Mr. McAlpine, one of his witnesses, testified that the street at that point was from 60 to 80 feet wide.  It had been traveled a great number of years, the city had improved it somewhat by making a cut in front of this property, varying at the northwest corner thereof to the southwest corner, from two to eight feet.  It left the property well situated for residence or business purposes.

In 1884 and 1885 ordinances were adopted authorizing the railway company to construct its road on Sixth street.  There was no grade in front of the property of Mr. Early until after these ordinances were passed.  The ordinances that authorized the railway company to construct its road on the street fixed the official grade of the street.  These ordinances provided for the construction of a double-track railway, past the property in controversy, upon the street, at the established grade thereof.  Mr. Early owned a number of vacant lots upon Sixth street, in the old city of Wyandotte, at the time the railway company built its road thereon.  The lots face west and corner upon Orville street.  The railway runs past these lots in a north and south direction.  The city having failed to bring Sixth street to grade, as by the ordinances it had agreed to do, the railway company proceeded, in April,

1886, to do the grading; and as the railway was to be built, according to the terms of the ordinance, upon the street at the established grade thereof, the company was obliged to grade so much of the street in front of Mr. Early's property as was necessary for the construction and operation of the road. In October, 1886, the railway company commenced the operation of its trains past his property. Late in 1886 this action was commenced. Upon January 25, 1887, the amended petition was filed. The grade that the railway company made in front of this property was about 18 feet deep at the south line of the property, and varied as it went north until it was something like seven or eight feet at the north line. The cut made in front of the Early property was about 30 feet wide at the top and about 23 feet wide at the bottom. A double-track railway was constructed in the street. The tracks take up about 15 feet, although it is claimed that from the ends of the ties of the road about 22 feet of the street are occupied.

The jury, in their special findings, stated that they assessed the damages of the land-owner at $500, and that these damages were allowed solely on account of the grading done by the railway company. In grading Sixth street for the construction of the street railway, the company acted for the city. It held a position, as it were, of a contractor for the city. The city established the grade, and under the statute had the right to do so. (Gen. Stat. of 1889, ¶ 562.) It is only when the grade of a street, alley, lane or avenue within a city is changed, after being once established, that damages can be allowed the property-owners which may be caused by the change of grade. Of course, the railway company in grading Sixth street, under authority from the city, was compelled to cut down the street in front of the Early property, but it had the lawful right to do that. This cutting or grading of necessity — to some extent — destroyed plaintiff's means of ingress to and egress from the street, because, by cutting the street, or a part of it, down to its established grade, it left the Early property above grade, or higher than the street. The railway company ought

not to be held liable because the-city failed to grade the street to its full width at the time the company constructed and put in operation its railway. The trial court so instructed the jury. It is possible from the evidence that there was a temporary obstruction of the street on account of the failure of the railway company to properly construct its road and track, but the jury did not allow damages for any act of omission or commission of this kind. Then again, the railway company had a reasonable time after grading the street to construct its tracks and road-bed and to put in macadam or ballast.

This case is not like *Railway Co. v. Twine*, 23 Kas. 585, 26 id. 702, and 30 id. 590, because the real complaint in this case is, that the damages were caused by cutting the street down to an established grade required by the city.

It is almost impossible to tell what, if any, permanent damage the Early property will suffer on account of the construction of the street railway, until Sixth street is brought to grade. If the grading was properly done, in a good and workmanlike manner, and confined wholly within the street, Early cannot recover because in cutting the street down to grade his lots are left elevated, or above grade. The jury hearing this case do not seem to have fully understood this rule. They were not clearly or sufficiently instructed upon this point; hence the erroneous verdict.

As to railroad companies occupying streets, see *Railroad Co. v. Larson*, 40 Kas. 301; *Railway Co. v. Cuykendall*, 40 id. 234; *W. & C. Rly. Co. v. Smith*, 45 id. 264; and *K. N. & D. Rly. Co. v. Mahler*, 45 id. 565.

The judgment of the district court will be reversed, and the cause remanded for a new trial.

All the Justices concurring.