## THE ATCHISON, TOPEKA & SANTA FÉ RAILROAD COMPANY et al. v. ORIE DAVIDSON.

1. LOT OWNER—*Rights in Adjoining Street.* An abutting lot owner, within an incorporated city of the second class, has a right to have the street adjoining his property maintained as a street, so that access to his lot may not be entirely cut off or destroyed.

2. STREET, *Obstructed by Railroad—Damages to Abutter.* If the roadbed and track of a railroad company are completed upon a street of a city of the second class in accordance with the provisions of a city ordinance, or with the assent and under the direction of the city officials, and is treated by the railroad company, the city officials and the lot owners as a permanent taking or appropriation of a part of the street for railroad purposes, and thereby the access to an abutting lot is completely obstructed, the lot owner may recover of the railroad company damages for the consequent depreciation in the value of the lot.

*Error from Sumner District Court.*

ACTION by *Davidson* against the *Railroad Company* and another for obstructing a street. Judgment for the plaintiff at the January term, 1890. The defendant companies bring the case here. The opinion states the facts.

*A. A. Hurd, Robert Dunlap,* and *O. J. Wood,* for plaintiffs in error.

*John A. Murray,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: On the 10th day of May, 1887, the council of the city of Wellington attempted by ordinance to discontinue and vacate First street, between A and F streets of that city, for the purpose of granting the right-of-way to two railroad companies, the defendants below. (*Showalter v. S. K. Rly. Co.,* 49 Kas. 421.) Soon afterward, the railroad companies, in pursuance of the ordinance, built upon First street an embankment or roadbed, and occupied the street, or portions thereof, with tracks and switches. Plaintiff below owns 2½ lots, making 62½ feet, fronting east on C street, which street runs north and south. The lots are 140 feet long, and abut on First street, which runs east and west. Upon the evidence introduced at the trial, and upon the findings of the jury, it is apparent that the right of plaintiff below of ingress to and egress from First street, including the alley opening into First street, has been seriously obstructed by the embankment or roadbed, the switches and tracks of the railroads. Within the frequent decisions of this court, the railroad companies have permanently taken and appropriated First street, or portions thereof, and in so doing have obstructed the ingress to and egress from the lots abutting thereon. (*Twine Case,* 23 Kas. 585; *Andrews Case,* 26 id. 706; *Fox Case,* 42 id. 490; *Curtan Case,* 51 id. 432.) If First street between A and F streets were actually vacated by the ordinance of the city, and the street reverted to the abutting lot owners in proportion to

frontage, of course the abutting lot owner in this case would be entitled to compensation for his lot, or any part thereof appropriated. See 1 Dill. Mun. Corp., 4th ed., § 97; 2 id., 4th ed., § 660, p. 785, § 680, p. 808; *Railroad Co. v. Railroad Co.*, 111 Mo. 666. If the city of Wellington, as a city of the second class, did not possess the power to give to the railroads, or any other corporation, the exclusive right to use and occupy the street, yet, as this court has always recognized the right of an abutting property owner to have the street maintained so that access to his premises may not be entirely cut off, the abutting lot owner is entitled to his damages, when access to his lots has been wholly or substantially destroyed.

*1. Lot owner—rights in adjoining street.*

*2. Street, obstructed by railroad—damages to abutter.*

It is insisted, however, that the railroad companies are not liable in damages for any obstruction of ingress to or egress from the lots caused by the embankment or changed condition of the surface of the street. As a general proposition, an abutting lot owner, in a city of the second class, cannot recover damages from the city or a railroad company acting under the direction of the city authorities, on account of a mere change in the grade or surface of the street. (*Rapid Transit Rly. Co. v. Early*, 46 Kas. 197.) But that is not this case. Here the embankment or roadbed on First street was not constructed for the convenience of public travel or for the use of wagons or other vehicles, or for the grading of the street, as that term is generally understood, but solely for the purpose of use by the railroads, and in constructing the embankment or roadbed for the tracks, switches, and switch stand, access to the lots and to the alley at the rear of the lots was substantially destroyed. Persons upon foot can use the street and alley, but it is impossible to have access to the lots or alley from First street with wagons or other vehicles. A city is not expected to grade a street for the purpose of preventing travel thereon and cutting off all access of the abutting lot owners. When city officers grade or change the grade of a street, they are expected to act for the public, with the public

accommodation and convenience in view, and not to destroy the street or prevent access to abutting lots.

This case differs from *Railroad Co. v. Union Investment Co.*, 51 Kas. 600, and *Railroad Co. v. Peterson*, 51 id. 604. In the Union Investment Company case, the embankment for the road and tracks was placed about the center of the street, the distance between the embankment and the abutting lots being from 30 to 40 feet. In surfacing the tracks, there were holes dug which interfered with the passing and repassing of vehicles, but these holes or obstructions were temporary only, and there was no permanent appropriation of any part of the street immediately adjoining the abutting lots so as to completely or substantially obstruct the ingress to and egress therefrom. In the Peterson case, the lots were not within the corporate limits of any city, and the track and roadbed were not constructed in accordance with the provisions of any ordinance or under the direction of the city officials. There was no permanent taking or appropriation of any part of the street so closely adjoining the abutting lots to sufficiently obstruct all ingress to or egress from to authorize the damages allowed in that case. But in that case it was observed:

"If the track and roadbed of a railroad are completed in accordance with the provisions of a city ordinance, or with the assent and under the direction of city officials, it may fairly be presumed that the railroad company 'considers such manner of occupation necessary for its purposes, and has so laid the track, with reference to its own necessities,' and that the city 'regards the use by the company of the alley or street so occupied as of more value to the public than the general use by the public itself, and will never interfere with such use by the company.'"

In this case, the embankment or roadbed, the tracks and switches were made and completed in the summer or fall of 1887. This action was not commenced until the 29th of March, 1889. The trial was had in the latter part of January, 1890. It does not appear, at any time prior to the commencement of the action, or since its commencement, that the railroad companies or the city authorities have in any way

changed the embankment or roadbed, or the tracks or switches, so as to permit reasonable access to the lots or alley from First street. On the other hand, many things appearing upon the trial tend to show that the railroad companies, the city authorities and the lot owners considered the occupation of a large portion of the street as permanent and exclusive—not temporary in any way. (*Railroad Co. v. Twine,* 23 Kas. 585.)

It is conceded that $400, included in the verdict of the jury, was in the nature of a double allowance for the obstructions complained of. This amount plaintiff below offers to remit. We need not comment upon the allegations in the petition concerning any injuries resulting from surface water, or the overflow of the cellar, the washing of mud, etc., upon the lots, because, upon the findings of the jury, as the judgment will be modified, no damages are allowed on account of any of these matters. The case will be remanded, and, with consent of the plaintiff below, judgment will be entered in the district court for $600 only.

All the Justices concurring.